# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION OF CHATTANOOGA**

| | |
|---|---|
| Stephen Cahill, *et al.,* individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Memorial Heart Institute, LLC, d/b/a The Chattanooga Heart Institute,<br><br>Defendant | Case No. 1:23-cv-00168-CLC-CHS |

**SETTLEMENT AGREEMENT**

This Settlement Agreement[1] is entered into between Plaintiffs Stephen Cahill, Sheila Edwards, Sidney Jackson, Gisele Reed Allen, Jeff Bryden, and Elyn Painter ("Plaintiffs") on behalf of themselves and the Settlement Class, and Defendant Memorial Heart Institute, LLC d/b/a The Chattanooga Heart Institute ("Defendant") as of the date last signed below. The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final Approval Order entered by the Court.

## I. Procedural History

1. Defendant is a healthcare network headquartered in Chattanooga, Tennessee that primarily serves patients in Tennessee and Georgia.

2. The members of the Settlement Class include current or former patients and employees of Defendant who provided it with their personal information as a necessary part of their business relationship and who were identified by Defendant as individuals potentially

[1] All capitalized terms herein shall have the same meanings as those defined in Section II herein.

affected by the Data Incident.

3. On April 17, 2023, Defendant identified indications of a cybersecurity attack on its IT network. Defendant launched a forensic investigation that determined that an unauthorized third party gained access to its network between March 8, 2023 and March 16, 2023. The investigation also determined that Private Information may have been accessed and/or exposed, without authorization, as result of the cyberattack.

4. The Private Information that may have been accessed and/or exposed included: names, mailing addresses, email addresses, phone numbers, dates of birth, drivers' license numbers, Social Security numbers, account information, health insurance information, diagnosis/condition information, lab results, medications and other clinical, demographic or financial information. A total of approximately 460,000 individuals' Private Information may have been accessed and/or exposed, with a subset of approximately 287,000 individuals for whom this Private Information included their Social Security numbers.

5. On November 2, 2023, a Consolidated Amended Complaint ("CAC") was filed [ECF # 24] alleging claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, bailment, breach of fiduciary duty, invasion of privacy, and declaratory and injunctive relief. *Id.*

6. Motion practice then commenced. On December 14, 2023, Defendant filed a Rule 12 Motion to Dismiss, which was fully briefed by the parties.

7. On September 26, 2024, the Court denied in part Defendant's motion to dismiss Plaintiffs' consolidated complaint. [ECF # 40]. Defendant filed its Answer on November 7, 2024. [ECF # 44].

8. The parties met and conferred, and a Scheduling Order was entered. Discovery then

commenced, including a large-scale document production, numerous depositions, and preparations for expert discovery.

9. While discovery was ongoing, the Parties began discussing the potential for early resolution and scheduled a virtual mediation with an experienced data breach mediator.

10. In advance of the mediation, the Parties exchanged comprehensive mediation statements. Through formal discovery, the parties had already exchanged information related to the nature and cause of the Data Incident, the number and geographic location of individuals impacted, the specific type of information accessed, and the injuries and damages alleged by Plaintiffs.

11. Experienced data breach mediator Jill Sperber conducted the virtual mediation on September 9, 2025, which lasted all day. Ultimately, the Parties reached an agreement in principle to the material terms of a class-wide settlement, which was a hybrid common fund and claims-made settlement. The terms were formally confirmed after the mediation.

12. The Parties have agreed to settle the Action in its entirety, with Defendant making no admissions of liability or wrongdoing, and subject to releasing all claims by the releasing parties as defined below.

13. Defendant entered into the Settlement Agreement to resolve all controversies and disputes arising out of or relating to the Data Incident and/or the allegations made in the CAC, and to avoid litigation costs and the expenses, distractions, burden, expense, and disruption to their business operations associated with further litigation.

14. Defendant does not in any way acknowledge, admit to, or concede any of the allegations or claims made in the CAC, and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the CAC or related to

or arising out of the Data Incident.

15. Nothing contained in the Settlement Agreement shall be used or construed as an admission of liability, and the Settlement Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of the Settlement Agreement.

16. Plaintiffs have entered into the Settlement Agreement in the interests of obtaining the benefits provided for herein for the Settlement Class Members and to avoid the risk, delay, and uncertainty of continued litigation.

17. Plaintiffs do not in any way concede that the surviving claims alleged in the CAC lack merit or are subject to any defenses.

18. The Parties intend the Settlement Agreement to bind Plaintiffs, Defendant, and all Settlement Class Members.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II. Definitions

19. "**Action**" means the putative class action lawsuit entitled *Cahill, et al., v. Memorial Heart Institute, LLC, d/b/a The Chattanooga Heart Institute*, Case No. 1:23-cv-00168-CLC-CHS, pending in the United States District Court for the Eastern District of Tennessee, Southern Division at Chattanooga.

20. "**Application for Attorneys' Fees, Costs, and Service Awards**" means the application made with the Motion for Final Approval seeking the payment of attorneys' fees and

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

costs to Class Counsel and Service Awards to the Class Representatives.

21. **"Cash Payment**" means a *pro rata* cash payment paid to the SSN Class Settlement Class Members who submit a Valid Claim under Section V herein.

22. "**Claim**" means the submission of a Claim Form by a Claimant for Settlement Class Member Benefits.

23. "**Claim Forms**" means the proof of claim, substantially in the forms attached hereto as ***Exhibit 3A*** (SSN Class) and ***3B*** (non-SSN Class), which may be modified, subject to the Parties' approval, to meet the requirements of the Settlement Administrator.

24. "**Claim Form Deadline**" shall be 90 days following the commencement of Notice, and is the last day by which Claim Forms may be submitted to the Settlement Administrator for a Settlement Class Member to be eligible for Settlement Class Member Benefits.

25. "**Claimant**" means a Settlement Class Member who submits a Claim Form.

26. **"Claims Process"** means the process by which Settlement Class Members may submit Claim Forms online at the Settlement Website or by mail to the Settlement Administrator, including the procedure to approve or reject Claims.

27. "**Class Counsel**" means Danielle L. Perry with Mason LLP, and Bryan L. Bleichner with Chestnut Cambronne PA.

28. "**Class List**" means a list of Settlement Class Members' names and postal addresses that Defendant shall prepare and provide to the Settlement Administrator within 10 days of Preliminary Approval. The Class List will clearly identify and delineate whether or not each Settlement Class Member fits into the SSN Class.

29. "**Class Representatives**" mean the Plaintiffs who sign the Settlement Agreement.

30. "**Complaint**" means the Consolidated Amended Class Action Complaint ("CAC")



Case 1:23-cv-00168-CLC-CHS Document 67-1 Filed 12/22/25 Page 6 of 76
PageID #: 576

filed by Plaintiffs on November 2, 2023 [ECF # 24].

31. "**Court**" means the United States District Court for the Eastern District of Tennessee, Southern Division at Chattanooga, and the judge(s) assigned to the Action.

32. "**Data Incident**" means the cybersecurity incident impacting Defendant from March 8, 2023 through March 16, 2023, which may have resulted in the unauthorized access to or acquisition of Settlement Class Members' Private Information.

33. "**Defendant**" means Memorial Heart Institute, LLC, d/b/a The Chattanooga Heart Institute.

34. "**Defendant's Counsel**" means Daniel Marvin and Joshua Mooney of Kennedys, CMKLLP.

35. "**Documented Losses**" means the documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are fairly traceable to the Data Incident, and that have not already been reimbursed by a third party, that Settlement Class Members may elect pursuant to Section V herein, up to a maximum of $5,500.00.

36. "**Effective Date**" means the latest of the following: (a) 5 days after the entry of the Final Approval Order, provided there are no objections to the Settlement; (b) 30 days after entry of the Final Approval Order if objections are filed and overruled and no appeals are taken from the Final Approval Order; or (c) if appeals are taken from the Final Approval Order, three business days after the date that a judgment of the United States Court of Appeals for the Sixth Circuit or Supreme Court of the United States is issued affirming the Final Approval Order, and the Final Approval Order is no longer subject to further appeal or review.

37. "**Escrow Account**" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

38. "**Fee Award and Costs**" means the amount of attorneys' fees and reimbursement of Litigation Costs and Expenses awarded by the Court to Class Counsel.

39. "**Final Approval**" means the final approval of the Settlement Agreement, which occurs when the Court enters the Final Approval Order.

40. "**Final Approval Hearing**" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement Agreement and the Application for Attorneys' Fees, Costs, and Service Awards.

41. "**Final Approval Order**" means an order that finally approves the Settlement Agreement, provides for the release of the Released Claims, and makes such other final rulings as are contemplated by this Settlement Agreement, which may or may not include approving payment of any Fee Award and Costs or Service Awards.

42. "**Litigation Costs and Expenses**" means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting, and settling the Action.

43. "**Long Form Notice**" means the long form notice of the Settlement, substantially in the form attached hereto as ***Exhibit 2***, that shall be posted on the Settlement Website and shall be available to Settlement Class Members by mail upon request made to the Settlement Administrator.

44. **"Medical Monitoring"** means two years of a medical monitoring product, either CyEx Medical Shield Complete or a mutually agreeable, equivalent medical monitoring product, that Settlement Class Members may elect to receive pursuant to Section V herein.

45. "**Motion for Final Approval**" means the motion that Plaintiffs and Class Counsel shall file with the Court seeking Final Approval of the Settlement, including Class Counsel's Application for Attorneys' Fees and Costs.

46. “**Motion for Preliminary Approval**” means the motion that Plaintiffs shall file with the Court seeking Preliminary Approval of the Settlement.

47. “**Net Settlement Fund**” means the amount of funds that remain in the SSN Class Settlement Fund after funds are paid from or allocated for payment from the SSN Class Settlement Fund for the following: (i) Settlement Administration Costs; (ii) Taxes and Tax-Related Expenses; (iii) Service Awards as approved by the Court; and (iv) Fee Award and Costs as approved by the Court.

48. “***Cy Pres* Recipient**” means the Tennessee Justice Center who will receive any funds stemming from any uncashed checks following the issuance of payment.

49. “**Notice**” means the Postcard Notice and Long Form Notice that Plaintiffs will ask the Court to approve in connection with the Motion for Preliminary Approval.

50. “**Notice Deadline**” means the day by which Notice must issue to the Settlement Class Members, which will be thirty (30) days after entry of the Preliminary Approval Order.

51. “**Notice Program**” means the methods provided for in the Settlement Agreement for giving Notice to the Settlement Class and consists of the Postcard Notice and Long Form Notice.

52. “**Notice of Deficiency**” means the notice sent by the Settlement Administrator to a Settlement Class member who has submitted an invalid or incomplete Claim.

53. “**Objection Period**” means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends 60 days following the commencement of Notice.

54. “**Opt-Out Period**” means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends 60 days following the commencement of Notice.

55. “**Party**” means each of the Plaintiffs and the Defendant, and “Parties” means

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

Plaintiffs and Defendant collectively.

56. "**Plaintiffs**" mean Stephen Cahill, Sheila Edwards, Sidney Jackson, Gisele Reed Allen, Jeff Bryden, and Elyn Painter.

57. "**Postcard Notice**" means the postcard notice of the Settlement, substantially in the form attached hereto as ***Exhibit 1*** that the Settlement Administrator shall disseminate to Settlement Class members by mail.

58. "**Preliminary Approval**" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form attached to the Motion for Preliminary Approval.

59. "**Preliminary Approval Order**" means the order preliminarily approving the Settlement and proposed Notice Program, substantially in the form attached hereto as ***Exhibit 4***.

60. "**Private Information**" means information collected by Defendant pertaining to Settlement Class Members, including, but not limited to name, mailing address, email address, phone number, date of birth, driver's license number, Social Security number, account information, health insurance information, diagnosis/condition information, lab results, medications and other clinical, demographic or financial information.

61. "**Releases**" means the releases and waiver set forth in Section XIII of the Settlement Agreement.

62. "**Released Claims**" means any and all actual, potential, filed or unfiled, known or unknown, fixed or contingent, claimed or unclaimed, asserted or unasserted, liquidated or unliquidated, existing or potential, suspected or unsuspected claims, demands, liabilities, rights, suits, causes of action, obligations, damages, punitive, exemplary or multiplied damages, expenses, costs, losses, indemnities, attorneys' fees and/or obligations, and remedies of any kind

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

or description, whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, based on any federal, state, local, statutory, or common law or any other law, against the Released Parties, or any of them, arising out of or relating to actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act that the Releasing Parties had or have that have been or could have been asserted in the Complaint or that otherwise relate to or arise from the Data Incident, the facts alleged in the Complaint, the alleged access, disclosure and/or the acquisition of Settlement Class Members' Private Information in the Data Incident.

63. "**Released Parties**" means Defendant and each entity which is controlled by, controlling or under common control with Defendant and each and every of its respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, servants, employees, partners, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, managers, administrators, executors, and trustees. Each of the Released Parties may be referred to individually as a "**Released Party**."

64. "**Releasing Parties**" means Plaintiffs and Settlement Class Members and their respective past, present, and future heirs, devisees, beneficiaries, conservators, executors, estates, administrators, assigns, trustees, receivers, agents, attorneys, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

65. "**Request for Exclusion**" is the written communication by or on behalf of a Settlement Class Member in which he or she requests to be excluded from the Settlement Class in the form and manner provided for in the Notice.

66. "**Residual Settlement Fund**" means any funds that remain in the Settlement Fund

after Settlement Payments have been distributed and the time for cashing and/or redeeming Settlement Payments has expired. The Residual Settlement Fund will be sent to the Non-Profit Residual Recipient.

67. "**Service Awards**" means the payment the Court may award the Plaintiffs for serving as Class Representatives, which is in addition to any Settlement Class Member Benefit due to Plaintiffs as Settlement Class Members.

68. "**Settlement Administrator**" means Kroll Settlement Administration.

69. "**Settlement Administration Costs**" means all costs and fees of the Settlement Administrator incurred in the administration of this Settlement, including, without limitation, all expenses or costs associated with providing Notice to the Settlement Class Members, locating Settlement Class Members, performing National Change of Address search(es) and/or skip tracing, processing claims, determining the eligibility of any person to be a Settlement Class Member, and administering, calculating and distributing the Settlement Fund to Settlement Class Members, as well as all costs associated with sending notices to governmental agencies as required by the Class Action Fairness Act. Settlement Administration Costs also includes all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Settlement Agreement. Settlement Administration Costs shall be allocated as follows: 53% of the total Settlement Administration Costs shall be allocated to the SSN Class and 47% of the total Settlement Administration Costs shall be allocated to the Total Class.

70. "**Settlement Agreement**" means this settlement agreement entered between Plaintiffs, on behalf of themselves and the Settlement Class, and the Defendant.

71. "**Settlement Class Member**" means any member of the Settlement Classes, which include both the **SSN Class** and the **Total Class**.

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

72. **"Settlement Class Member Benefits"** means the benefits made available to Settlement Class Members pursuant to this Settlement Agreement.

73. "**Settlement Fund**" means the sum of a total of up to $3.75 Million to be paid by or on behalf of Defendant, including any interest accrued thereon after payment. This payment by or on behalf of Defendant is the limit and extent of the monetary obligations of Defendant and each entity which is controlled by, controlling or under common control with Defendant and each and every of their respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, servants, employees, partners, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, managers, administrators, executors, and trustees, with respect to the Settlement Agreement and the settlement of this matter.

74. "**Settlement Website**" means the website the Settlement Administrator will establish as a means for the Settlement Class members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to the Settlement Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs, and Service Awards, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for at least six months after Final Approval. The Parties shall jointly agree on the naming of the website name and link.

75. "**Social Security Class Member**" or "**SSN Class Member**" means all living individuals who are members of the Total Class and whose Social Security number was identified as accessed or accessible during the Data Incident. The SSN Class excludes: (a) the judge(s) to whom the Action is assigned and any member of those judge's staffs or immediate family

members; (b) counsel for the Parties, any member of their respective staffs who worked directly on the Action, and any member of their immediate families; (c) any governmental entity; (d) any entity in which any of the Defendants have a controlling interest; (e) any of Defendants' subsidiaries, parents, affiliates, and officers, directors, legal representatives, heirs, successors, or assigns; and (f) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. The SSN Class consists of approximately 287,000 individuals. To be explicit, all members of the SSN Class are part of the Total Class.

76. "**SSN Class Fund**" shall be a non-reversionary common fund totaling $2 Million Dollars.

77. "**Taxes and Tax-Related Expenses**" means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Defendant with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund.

78. "**Total Class**" means all living individuals whose Private Information was identified as accessed or accessible in the Data Incident. The Total Class excludes: (a) the judge(s) to whom the Action is assigned and any member of those judge's staffs or immediate family members; (b) counsel for the Parties, any member of their respective staffs who worked directly on the Action, and any member of their immediate families; (c) any governmental entity; (d) any entity in which any of the Defendants have a controlling interest; (e) any of Defendants' subsidiaries, parents, affiliates, and officers, directors, legal representatives, heirs, successors, or assigns; and (f) Settlement Class Members who submit a valid Request for Exclusion prior to the

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

Opt-Out Deadline. For the avoidance of doubt, the Total Class consists of approximately 460,000 individuals and includes all members of the SSN Class.

79. “**Total Class Fund**” shall be an amount not to exceed $1.75 Million Dollars, to be paid to members of the Total Class based on Valid Claims made pursuant to Section V below.

80. “**Valid Claim**” means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator’s Notice of Deficiency may result in a determination that the Claim is not a Valid Claim or may permit the Settlement Administrator to provide alternative relief to the Claimant.

## III. <u>Settlement Fund</u>

81. Defendant will fund or cause to fund the Escrow Account to establish the Settlement Fund. Within thirty (30) days of entry of the Preliminary Approval Order and the Settlement Administrator providing to Defendant a reasonably detailed written statement of the amount estimated by the Settlement Administrator to pay the Settlement Administration Costs anticipated to be incurred up to the Final Approval Hearing, Defendant will pay to the Settlement Fund Escrow Account the amount estimated by the Settlement Administrator to pay the Settlement

Administration Costs anticipated to be incurred up to the Final Approval Hearing. Within thirty (30) days of the Effective Date, Defendant will pay into the Settlement Fund Escrow Account the remaining amount necessary, including $2 Million Dollars for the SSN Class Fund and up to a total of $1.75 Million for the Total Class Fund into the Escrow Account. Defendant shall not be responsible for any other payments under the Settlement Agreement.

82. The SSN Settlement Fund is non-reversionary. As of the Effective Date, all rights of Defendant in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is terminated, as described in Section VIII.

83. The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l at all times since creation of the Escrow Account. The Settlement Administrator, within the meaning of United States Treasury Reg. § 1.468B-l, shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. Defendant, Defendant's insurers and reinsurers, Defendant's counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the Taxes or Tax-Related Expenses. The Escrow Account shall indemnify and hold Defendant, Defendant's insurers and reinsurers, Defendant's counsel, Plaintiffs, and Class Counsel harmless for all taxes (including, without limitation, taxes payable by reason of any such indemnification).

84. The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or, in the event this Settlement Agreement is terminated in accordance with Section VIII, the balance returned to those who paid the Settlement Fund.

85. Any amount remaining in the SSN Class Residual Settlement Fund shall be paid to the *Cy Pres* Recipient in accordance with Paragraph 133. No amounts may be withdrawn from the SSN Class Settlement Fund unless expressly authorized by this Settlement Agreement or approved by the Court.

86. The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by Plaintiffs or any Settlement Class Member of any payment or transfer made pursuant to this Settlement Agreement or derived from or made pursuant to the Settlement Fund. Plaintiffs and Settlement Class Members shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to the Settlement Agreement.

## IV. Certification of the Settlement Class

87. In the Motion for Preliminary Approval, Plaintiffs shall propose and request that the Court certify the Settlement Classes for settlement purposes only. Defendant agrees solely for purposes of the settlement provided for in this Settlement Agreement, and the implementation of such settlement, that this case shall proceed as a class action; provided however, that if a Final Approval Order is not issued, then any certification shall be null and void and, for the avoidance of doubt, Defendants shall retain all rights to object to any future requests to certify the classes. Plaintiffs and Class Counsel shall not reference this Settlement Agreement in support of any subsequent motion for class certification of any class in the Action.

## V. Settlement Consideration

88. The Settlement Fund is made up of two separate funds: a $2 Million Dollar non-reversionary common fund for the SSN Class, which consists of approximately 287,000 individuals; and a $1.75 Million Dollar fund for the Total Class. The Total Class consists of

approximately 460,000 individuals, and specifically includes all Settlement Class Members (*i.e.*, all individuals in the SSN Class and all class members whose SSN was not affected). The SSN Class Fund and the Total Class Fund shall be administered separately.

**A. The Total Class Member Benefits**

89. When submitting a Claim, all Settlement Class Members may elect (i) reimbursement for Documented Losses and (ii) Medical Monitoring. If a Settlement Class Member does not submit a Valid Claim or opt-out of the Settlement, the Settlement Class Member will release his or her claims against Defendant without receiving any Settlement Class Member Benefits.

**i. Reimbursement for Documented Losses**

90. All Settlement Class Members may submit a Claim for reimbursement of Documented Losses, up to a maximum of $5,500.00. Documented Losses are unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident including, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (ii) costs incurred on or after March 16, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

91. Settlement Class Members who elect to submit a claim for reimbursement for Documented Losses must provide to the Settlement Administrator the information required to evaluate the claim, including: (1) the Settlement Class Member's name and current address;

(2) documentation supporting their claim; (3) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone; and (4) whether the Settlement Class Member has been reimbursed for the loss by another source. Documentation supporting Documented Losses can include receipts or other documentation not "self-prepared" by the Settlement Class Member that document the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to support a request for reimbursement, but can be considered to add clarity to or support other submitted documentation. Settlement Class Members shall not be reimbursed for Documented Losses if they have already been reimbursed for the same losses by another source, including compensation provided in connection with the identity protection and credit monitoring services offered as part of the notification letter provided by Defendant or otherwise. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected.

92. The Settlement Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member. The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for Documented Losses reflects valid Documented Losses actually incurred that are fairly traceable to the Data Incident, but shall consult with Class Counsel and Defendant's counsel in making individual determinations. In assessing what qualifies as "fairly traceable," the Parties agree to instruct the Settlement Administrator to consider (i) the timing of the; and/or (ii) whether the Personal Information used to commit identity theft or fraud consisted of the same type of Personal Information that was potentially impacted as a result of the Data Incident. The Settlement Administrator is authorized

to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

**ii. Credit Monitoring**

93. In addition, all Settlement Class Members may elect to receive 2 years of Medical Monitoring, which offers dark-web and credit monitoring. The Parties have agreed to offer all Settlement Class Members either Cyex Medical Shield Complete, or a mutually agreeable, equivalent monitoring product. The Medical Monitoring product has a value of approximately $120.00 per year, per Settlement Class Member.

**B. The SSN Class Settlement Class Member Benefits**

94. **Cash Payment.** SSN Class Members may submit a claim for a Cash Payment.

95. The amount of the Cash Payment will be determined on a *pro rata* basis after payment of the SSN Class Settlement Administration Costs, equivalent to 53% of the cost of all Settlement Administration Costs, attorneys' fees and proportional (53%) of attorney expenses, and all Service Awards to the Class Representatives.

**C. Preliminary Approval**

96. Within fifteen (15) days following execution of the Settlement Agreement by all Parties, Class Counsel shall file a Motion for Preliminary Approval. The proposed Preliminary Approval Order shall be attached to the motion as an exhibit.

97. The Motion for Preliminary Approval shall, among other things, request the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Classes for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claim Forms and Claim Process; (5) approve the procedures for

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

Settlement Class Members to opt-out of the settlement or for Settlement Class Members to object to the settlement; (6) appoint Class Counsel for settlement purposes; (7) appoint the Plaintiffs who signed this Settlement Agreement as Class Representatives for settlement purposes; (8) stay the Action pending Final Approval of the Settlement; and (9) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, the Parties, Class Counsel, and Defendant's counsel that is no earlier than 120 days after entry of the Preliminary Approval Order.

98. Class Counsel shall provide Defendant's Counsel with a draft of the Motion for Preliminary Approval within a reasonable time frame prior to its filing to provide an adequate opportunity for Defendant to provide input and request revisions.

## VI. Settlement Administrator

99. The Parties agree that, subject to Court approval, Kroll Settlement Administration shall be designated the Settlement Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in this Settlement Agreement and the Preliminary Approval Order, and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

100. The Settlement Administrator shall administer various aspects of the settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in the Settlement Agreement, including, but not limited to, effectuating the Notice Program, handling the claims process, administering the Settlement Fund, and distributing all Settlement Class Member Benefits, including Medical Monitoring activation codes to Settlement Class Members who submit Valid Claims.

101. The Settlement Administrator's duties include:

a. Completing the Court-approved Notice Program by noticing the Settlement

Classes by Postcard Notice, sending out Long Form Notices and paper Claim Forms on request from Settlement Class Members, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims;

b. Preparing and mailing the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate federal and state officials;

c. Establishing and maintaining the Escrow Account approved by the Parties;

d. Establishing and maintaining a post office box to receive opt-out requests from the Settlement Class, objections from Settlement Class Members, and Claim Forms;

e. Establishing and maintaining the Settlement Website to provide important information and to receive electronic Claim Forms;

f. Establishing and maintaining an automated toll-free telephone line for Settlement Class Members to call with settlement-related inquiries, and answering the "frequently asked questions" of Settlement Class Members who call with or otherwise communicate such inquiries;

g. Responding to any mailed Settlement Class Member inquiries;

h. Processing all opt-out requests from the Settlement Class;

i. Providing weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notice of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

j. In advance of the Final Approval Hearing, preparing a declaration for the Parties confirming how and when the CAFA Notices were sent to state authorities, that the Notice

Program was completed in accordance with the terms of this Settlement Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each Settlement Class Member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

k. Distributing, out of the Settlement Fund, Cash Payments by electronic means or by paper check;

l. Sending Settlement Class Members who elect Medical Monitoring emails instructing how to activate their Medical Monitoring service;

m. Paying Fee Award and Costs and Service Awards, as approved by the Court;

n. Paying Settlement Administration Costs following approval by Class Counsel; and

o. Any other settlement administration function at the instruction of Class Counsel and Defendant's counsel, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Settlement Class Member Benefits who submit Valid Claims have been properly distributed.

## VII. Notice to the Settlement Class, Opt-Out Procedures, and Objection Procedures

102. Defendant will make available to the Settlement Administrator the Class List no later than 10 days after entry of the Preliminary Approval Order.

103. Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein, using the forms of Notice approved by the Court.

104. The Postcard Notice shall include, among other information: a QR code that links directly to the Claim Forms on the Settlement Website, a description of the material terms of the Settlement; how to submit Claim Forms; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class Members to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Settlement Agreement and other related documents and information.

105. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

106. The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claim Forms that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

107. The Long Form Notice also shall include a procedure for Settlement Class Members to opt-out of the Settlement Class, and the Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the opt-out instructions. A Settlement Class Members may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a Request for Exclusion to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. The Request for Exclusion must be personally signed by the Settlement Class Member and contain the requestor's name, address, telephone number, and email address (if any),

and include a statement indicating a request to be excluded from the Settlement Class. Any Settlement Class Members who do not submit a timely and valid Request for Exclusion shall be bound by the terms of the Settlement Agreement even if that Settlement Class Member does not submit a Valid Claim.

108. The Long Form Notice also shall include a procedure for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards, and the Postcard Notice shall direct Settlement Class members to review the Long Form Notice to obtain the objection instructions. Objections must be sent by U.S. Mail to the Court, Plaintiffs' Counsel, Defendant's Counsel, and the Settlement Administrator at the addresses below:

| **Court** | **Plaintiffs' Counsel** | **Defendant's Counsel** | **Settlement Administrator** |
|---|---|---|---|
| **United States District Court for the Eastern District of Tennessee, Chattanooga Division**<br><br>900 Georgia Avenue, Suite 309<br>Chattanooga, Tennessee 37402 | Bryan L. Bleichner<br>**CHESTNUT CAMBRONNE PA**<br>100 Washington Ave., Ste. 1700<br>Minneapolis, MN 55401<br><br>Danielle L. Perry<br>**MASON LLP**<br>5335 Washington Ave. NW, Ste. 640<br>Washington, DC 20015 | Joshua A. Mooney<br>**Kennedys CMK LLP**<br>1600 Market Street, Suite 1410<br>Philadelphia, PA 19103<br><br>Daniel S. Marvin<br>**Kennedys CMK LLP**<br>22 Vanderbilt Avenue, 24th Floor<br>New York, NY 100117 | **Kroll Settlement Administration**<br><br>P.O. Box 225391<br>New York, NY 10150-5391 |

For an objection to be considered by the Court, the relevant Settlement Class Member must submit the objection no later than the last day of the Objection Period, as specified in the Notice, and the relevant Settlement Class Member must not have excluded himself or herself from the Settlement Class. If submitted by U.S. mail with first-class postage prepaid and addressed in accordance with the instructions, an objection shall be deemed to have been submitted on the postmark date as

indicated on the envelope. If submitted by courier (*e.g.*, Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

109. For an objection to be valid, the objection must also set forth:

a. The name of the proceedings;

b. The objector's full name, mailing address, telephone number, and email address (if any);

c. All grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

d. The identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

e. A statement of whether the objector and/or his/her attorney(s) intend to appear at the Final Approval Hearing;

f. A statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

g. A list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

h. The number of times the objector, the objector's counsel and/or counsel's law firm has objected to a class action settlement within the five (5) years preceding the date of the objection, the caption of each case in which the objection was made, and a copy of any orders related to or ruling upon the prior objections that were issued by the trial and appellate courts in each listed case; and

i. the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Defendant's counsel may conduct limited discovery on any objector or objector's counsel.

110. Within seven (7) days after the deadline for opt-out as set forth in this Paragraph and as approved by the Court, the Settlement Administrator shall furnish to counsel for the Parties a complete list of all timely and valid request for exclusions.

111. In the event that within seven (7) days after receipt of the list from the Settlement Administrator, there have been more than five thousand (5,000) Opt-Outs (exclusions), Defendant may, by notifying Class Counsel in writing, void the Settlement Agreement. If Defendant voids the Settlement Agreement pursuant to this Paragraph, Defendant shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Class Counsel and Service Awards

112. The Settlement Administrator shall perform reasonable address traces for Postcard Notices that are returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis or Westlaw database that can be utilized for such purpose. No later than sixty (60) days before the original date set for the Final Approval Hearing, the Settlement Administrator shall complete the re-mailing of Postcard Notice to those Settlement Class members whose new addresses were identified as of that time through address traces.

113. The Notice Program shall be completed no later than 60 days before the original date set for the Final Approval Hearing.

## VIII. <u>Claim Form Process and Disbursement of Settlement Class Member Benefits</u>

114. The Parties shall provide a copy of this Settlement Agreement to the Settlement Administrator and instruct the Settlement Administrator to administer the settlement in accordance

with the procedures set forth herein.

115. The Notice and the Settlement Website will explain to Settlement Class Members that they may be entitled to a benefit under the Settlement and how to submit Claim Forms.

116. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Forms.

117. The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement Agreement and thus qualifies as a Valid Claim. The Settlement Administrator shall examine the Claim Forms before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

118. The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. If the Settlement Administrator identifies any Claim Form that appears to be a duplication, the Settlement Administrator shall contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration, as required.

119. The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps they deem appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may request information from Claimants or deny Claims, subject to the supervision of the Parties and ultimate oversight by the Court.

120. Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator, and the Settlement Administrator shall advise the Claimant or Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the Claimant's physical or e-signature. A Claimant shall have until the Claim Form Deadline, or fifteen (15) days from the date the Notice of Deficiency is sent to the Claimant via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Claimant timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Claimant does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless Defendant and Class Counsel otherwise agree.

121. Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

a. Failure to fully complete and/or sign the Claim Form;

b. Illegible Claim Form;

c. The Claim Form is fraudulent;

d. The Claim Form is improperly duplicative of another Claim Form;

e. The Claimant is not a Settlement Class Member;

f. The Claimant submitted a timely and valid request to opt out of the Settlement Class;

g. The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

h. Failure to submit a Claim Form by the Claim Form Deadline; and/or

i. The Claim Form otherwise does not comply with the requirements of this Settlement.

122. The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

a. The Settlement Administrator shall have sixty (60) days from the Claim Form Deadline to approve or reject Claims;

b. A request for additional information by sending a Notice of Deficiency shall not be considered a denial for purposes of this Paragraph;

c. If a Claim is rejected, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendant's counsel shall be provided with copies of all such notifications to Claimants; and

d. The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

123. The Settlement Administrator shall provide all information gathered in

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or Defendant's Counsel. Additionally, Class Counsel and Defendant's Counsel shall have the right, but not the obligation, to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

124. No person or entity shall have any claim against Defendant, Defendant's Counsel, Plaintiffs, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement. The Parties, Class Counsel, Defendant's Counsel, and Defendant's insurers and reinsurers, shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

125. The Settlement Administrator shall distribute the Settlement Class Member Benefits provided for in Section V above, no later than seventy-five (75) days after the Effective Date.

126. Any monetary payments to Settlement Class Members shall be made by electronic payment or by paper check, by sending Settlement Class Members with Valid Claims an email to select from alternative forms of electronic payment or by paper check. Settlement Class Members

will have a period of one hundred eighty (180) days to select their electronic payment or to negotiate their paper check. In the event of any complications arising in connection with the issuance of an electronic payment, the Settlement Administrator shall provide written notice to Class Counsel and Defendant's Counsel. Absent specific instructions from Class Counsel and Defendant's Counsel, the Settlement Administrator shall proceed to resolve the dispute using its best practices and procedures to ensure that the funds are fairly and properly distributed to the person or persons who are entitled to receive them. In the event the Settlement Administrator is unable to distribute funds to the person or persons entitled to receive them due to incorrect or incomplete information provided to the Settlement Administrator, the funds shall become residual funds, and the Settlement Class Member shall forfeit his or her right to the funds.

127. The Settlement Administrator shall send an email to Settlement Class Members with Valid Claims that elected Medical Monitoring with information on how to enroll in the Medical Monitoring, including the activation code.

128. The Settlement Administrator must first use the funds available in the SSN Class Settlement Fund (after payment of the SSN Fund portion of all Settlement Administration Costs and Taxes and Tax-Related Expenses) to make payments for the SSN Fund Fee Award and Costs, followed by all Service Awards, followed by Valid Claims for Documented Losses by SSN Class Members, followed by SSN Class Members' Valid Claims for Medical Monitoring, followed by Valid Claims for Cash Payments.

129. All *pro rata* determinations of the amount of the Cash Payment for SSN Class Members shall be performed by the Settlement Administrator, upon notice to Class Counsel and Defendant's counsel.

130. No portion of the SSN Class Settlement Fund shall revert or be repaid to Defendant

after the Effective Date. To the extent any monies remain in the SSN Class Residual Settlement Fund more than one hundred fifty (150) days after the distribution of Settlement payments to the SSN Class Settlement Class Members, or thirty (30) days after all reissued Settlement Checks are no longer negotiable, whichever occurs later or as otherwise agreed to by the Parties, any remaining monies shall be distributed as required by state law or to the *Cy Pres* recipient.

## IX. Final Approval Order and Final Judgment

131. Plaintiffs shall file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees, Costs, and Service Awards, no later than 30 days before the original date set for the Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Settlement and Application for Attorneys' Fees, Costs, and Service Awards. In the Court's discretion, the Court may also hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the settlement and/or to the Application for Attorneys' Fees, Costs, and Service Awards, provided each objector submitted timely objections that meet all of the requirements listed in the Settlement Agreement.

132. At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment, and whether to grant the Application for Attorneys' Fees, Costs, and Service Awards. The proposed Final Approval Order shall, among other things:

a. Determine that the Settlement is fair, adequate and reasonable;

b. Finally certify the Settlement Classes for settlement purposes only;

c. Confirm that the Notice Program as carried out satisfied Due Process requirements;

d. Bar and enjoin all Releasing Parties from asserting or otherwise pursuing any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

e. Release Defendant and the other Released Parties from the Released Claims; and

f. Reserve the Court's continuing and exclusive jurisdiction over the Parties to the Settlement Agreement, including Defendant, Plaintiffs, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce the Settlement Agreement in accordance with its terms.

## X. Service Awards, Attorneys' Fees and Costs

133. **Service Awards** – All Class Representatives are members of the SSN Class. Class Counsel may seek Service Awards of up to $4,500.00 for each Class Representative, subject to Court approval. The Service Awards shall be payable out of the SSN Class Settlement Fund by the Settlement Administrator either to Class Counsel for distribution to each Class Representative or to the Class Representatives directly, within ten (10) days of the Effective Date. Class Counsel will provide the Settlement Administrator with instructions following the Effective Date.

134. **Attorneys' Fees and Expenses** - Class Counsel shall apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund. For the SSN Class Fund, Class Counsel may apply to the Court for an award of attorneys' fees of up to $666,666.67 and proportional expenses (53% of total expenses) not to exceed $26,500. For the Total Class Fund, Class Counsel may apply to the Court for an award of attorneys' fees of up to $583,333.33 and proportional expenses (47% of total expenses) not to exceed $23,500. The combined total of attorney's fees shall not exceed $1.25 Million. In addition, Class Counsel may apply to the Court

for a combined total award of reasonable expenses incurred in the prosecution of the Action, not to exceed $50,000. The attorneys' fees and expense awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel within ten (10) days of the Effective Date.

135. This settlement is not contingent on the Court's approval of the request for attorneys' fees and expenses or of Class Representative Service Awards. If the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Settlement Agreement shall remain in force. The provision for attorneys' fees and expenses was negotiated after all material terms of the Settlement Agreement.

136. To the extent applicable, and unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Expenses among Plaintiffs' Counsel and any other attorneys for Plaintiffs. Defendant and its insurers and reinsurers shall have no liability or other responsibility for allocation of any such attorneys' fees and expenses.

## XI. Releases

137. Upon the Effective Date, and in consideration of the settlement relief and other consideration described herein, the Releasing Parties shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished, and completely discharged the Released Parties from any and all Released Claims.

138. The Released Claims include the release of Unknown Claims. "Unknown Claims" means claims that could have been raised in the Action, but which Plaintiffs, any Settlement Class Member, and/or any Releasing Party do not know or suspect exist which, if known by him, her or it, might affect his or her agreement to release the Released Parties or the Released Claims or might

affect his or her decision to agree, object, or not to object to the settlement. Upon the Effective Date, Plaintiffs, the Settlement Class Members, and any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, and specifically agree to the non-application to this Settlement Agreement, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

139. Upon the Effective Date, each of the Releasing Parties shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Class Representatives, the Settlement Class, and the Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including, but not limited to, any Unknown Claims they may have, as that term is defined in this Paragraph.

140. Upon the entry of the Final Approval Order and Judgment, Plaintiffs and the Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by the Settlement Agreement or by the Final Approval Order. It is further agreed that the Settlement may be pleaded as a

complete defense to any proceeding subject to this section.

## XII. Modification/Termination of Settlement

141. The terms and provisions of this Settlement Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court, provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under the Settlement Agreement.

142. This Settlement Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

a. Court approval of the settlement consideration set forth in Section V and the Releases set forth in Section XIII of this Settlement Agreement;

b. The Court has entered the Preliminary Approval Order;

c. The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of Final Approval; and

d. The Effective Date has occurred.

143. If any of the conditions specified in the preceding paragraph are not met, or if the Court otherwise imposes any modification to or condition to approval of the settlement to which the Parties do not consent, then this Settlement Agreement shall be cancelled, terminated, and deemed null and void.

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

144. Additionally, Defendant shall have the sole option to terminate this Settlement Agreement if more than five thousand (5,000) opt-outs of the settlement are received. Defendant shall notify Class Counsel and the Court of its intent to terminate this Settlement Agreement pursuant to this paragraph within five (5) business days after the Settlement Administrator furnishes to counsel for the Parties a complete list of all timely and valid request for exclusions, or the option to terminate shall be considered waived.

145. In the event this Settlement Agreement is terminated or fails to become effective, then this Settlement Agreement shall be considered null and void; all obligations of Plaintiffs, Class Counsel, Defendant, and Defendant's Counsel under the Settlement Agreement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Settlement Agreement. The Parties shall further jointly file a status report in the Court seeking to reopen the Action and all papers filed. In such event, all of the Parties' respective pre-settlement rights, claims, and defenses will be retained and preserved; any discussions, offers, or negotiations associated with this settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose; and the terms and provisions of this Settlement Agreement shall not be used in this Action or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

146. In the event this Settlement Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to the Defendant. However, Defendant shall have no right to seek from Plaintiffs, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid before the Settlement Agreement is terminated or fails to become effective.

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

## XIII. No Admission of Liability

147. This Settlement Agreement reflects the Parties' compromise and settlement of disputed claims. This Settlement Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. The Defendant denied and continues to deny each of the claims and contentions alleged in the CAC. The Defendant specifically denies that a class could or should be certified in the Action for litigation purposes. The Defendant does not admit any liability or wrongdoing of any kind, by this Settlement Agreement or otherwise. Defendant has agreed to enter into this Settlement Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action.

148. Class Counsel believe the surviving claims asserted in the Action have merit, and they have examined and considered the Settlement Class Member Benefits, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel have investigated the facts and law relevant to the merits of the claims, conducted informal discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed settlement set forth in the Settlement Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

149. This Settlement Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of the Settlement Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

150. Neither the Settlement Agreement, nor any act performed or document executed pursuant to or in furtherance of the settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

151. In addition to any other defenses Defendant or the Released Parties may have at law, in equity, or otherwise, to the extent permitted by law, the Settlement Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of the Settlement Agreement or the Releases contained herein.

## XIV. Miscellaneous Provisions

152. Confidentiality. To the extent permitted by ethics rules, the Parties and their counsel shall keep confidential all settlement communications, including communications regarding the negotiation and drafting of this Settlement Agreement. No Party will make any public statement about the settlement that has not been approved by the other Parties, except as required or authorized by law. Approval of any proposed public statement of the other Parties will not be unreasonably withheld. This Paragraph shall not be construed to limit or impede the Notice requirements contained in this Settlement Agreement, nor shall this paragraph be construed to prevent Class Counsel or Defendant's counsel from notifying or explaining that the Action has settled or limit the representations that the Parties or their counsel may make to the Court to assist in the Court's evaluation of the Settlement Agreement, Preliminary Approval, Final Approval, and

any objection to the settlement's terms. Defendant may also provide information about the settlement to its attorneys, members, partners, insurers, brokers, agents, accountants and other persons or entities as required by securities laws or other applicable laws and regulations.

153. Deadlines. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in the Settlement Agreement shall refer to calendar days unless otherwise specified.

154. Gender and Plurals. As used in the Settlement Agreement, the masculine, feminine or neutral gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

155. Headings. The headings contained in this Settlement Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Settlement Agreement.

156. Binding Effect. This Settlement Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

157. Cooperation of Parties. The Parties to the Settlement Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the settlement described in this Settlement Agreement.

158. Obligation to Meet and Confer. Before filing any motion in the Court raising a dispute arising out of or related to this Settlement Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

159. Integration and No Reliance. The Settlement Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject

matter hereof. This Settlement Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Settlement Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

160. No Conflict Intended. Any inconsistency between the headings used in this Settlement Agreement and the text of the paragraphs of this Settlement Agreement shall be resolved in favor of the text.

161. Governing Law. Except as otherwise provided herein, the Settlement Agreement shall be construed in accordance with, and be governed by, the laws of the State of Tennessee, without regard to the principles thereof regarding choice of law.

162. Counterparts. This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile, through email of a PDF, or DocuSign shall be deemed an original.

163. Jurisdiction. The Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

164. Notices. All notices provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

If to Plaintiffs or Class Counsel:

Bryan L. Bleichner
Philip J. Krzeski
**CHESTNUT CAMBRONNE PA**
100 Washington Ave., Ste. 1700
Minneapolis, MN 55401
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

Danielle L. Perry
**MASON LLP**
5335 Washington Ave. NW, Ste. 640
Washington, DC 20015
dperry@masonllp.com

If to Defendant's Counsel:

Joshua A. Mooney
**Kennedys CMK LLP**
1600 Market Street, Suite 1410
Philadelphia, PA 19103
Joshua.Mooney@Kennedyslaw.com
Daniel S. Marvin
**Kennedys CMK LLP**
22 Vanderbilt Avenue, 24th Floor
New York, NY 10017
Daniel.Marvin@kennedyslaw.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

165. Modification and Amendment. The Settlement Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Defendant's Counsel and, if the settlement has been approved preliminarily by the Court, approved by the Court.

166. No Waiver. The waiver by any Party of any breach of this Settlement Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of the Settlement Agreement.

167. Authority. Any person executing this Settlement Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Settlement Agreement to all the terms and provisions of this Settlement Agreement.

168. Agreement Mutually Prepared. Neither Plaintiffs nor Defendant shall be considered to be the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Settlement Agreement.

169. Independent Investigation and Decision to Settle. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Settlement Agreement, that will not affect or in any respect limit the binding nature of this Settlement Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their experts used to make certain determinations, arguments, and settlement positions. The Parties agree this settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

terminate the settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Settlement Agreement now and thus, in furtherance of their intentions, the Settlement Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Settlement Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

170. Receipt of Advice of Counsel. Each Party acknowledges, agrees, and specifically warrants that he or she has fully read this Settlement Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Settlement Agreement and the Releases, and the legal effects of this Settlement Agreement and the Releases, and fully understands the effect of this Settlement Agreement and the Releases.

171. Exhibits. The Exhibits to the Settlement Agreement are an integral part of the Settlement Agreement and are hereby incorporated and made part of the Settlement Agreement.

(remainder of page intentionally left blank)

## SIGNATURES OF THE PARTIES

Stephen Cahill

Stephen Cahill
Stephen Cahill (Dec 19, 2025 11:38:50 CST) Date: 12/19/2025

Sheila Edwards
Signed by:
Sheila Edwards
FB10B3ACD1B8483... Date: 12/19/2025 | 5:32 PM CST

Sidney Jackson
Sidney Jackson
ID b97eLpzU45h337fh95tu9GHV Date: 12/19/2025

Gisele Reed Allen
Gisele Allen Date: 12/21/2025

Jeff Bryden
Jeff Bryden
Jeff Bryden (Dec 19, 2025 17:53:38 EST) Date: 19/12/2025

Elyn Painter
Elyn Painter
Elyn Painter (Dec 19, 2025 16:31:21 EST) Date: 12/19/2025

**(Class Counsel)**

Danielle J B Date: December 19, 2026

**By:** Danielle Perry
**Title:** Co-lead, Mason LLP

DocuSigned by:
Bryan Bleichner
DCCABCAAF90A426... Date: 12/22/2025 | 10:37 AM EST

**By:** Bryan Bleichner
**Title:** Co-lead, Chestnut Cambronne PA

**DEFENDANT**

______________________________________ Date: ____________________
**By:** ______________________________
**Title:** ______________________________

**Defendant's Counsel (approving as to form)**

______________________________________ Date: ____________________
**By:** ______________________________
**Title:** __________

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

# Exhibit 1

*Settlement Administrator - 83322*
c/o Kroll Settlement Administration LLC
PO Box 5324
New York, NY 10150-5324

FIRST-CLASS MAIL
U.S. POSTAGE PAID
CITY, ST
PERMIT NO. XXXX

**ELECTRONIC SERVICE REQUESTED**

NOTICE OF CLASS ACTION SETTLEMENT

# If you received this Notice, you have been identified as someone eligible for benefits from a class action settlement regarding a data breach.

www.[website].com

<<Refnum Barcode>>

Class Member ID: <<Refnum>>

**Postal Service: Please do not mark or cover**

<<FirstName>> <<LastName>>
<<BusinessName>>
<<Address>>
<<Address2>>
<<City>>, <<ST>> <<Zip>>-<<zip4>>
<<Country>>

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB



A Settlement has been reached with Memorial Heart Institute, LLC, doing business as The Chattanooga Heart Institute ("Defendant") in a class action lawsuit about a cybersecurity incident that occurred between March 8, 2023 through March 16, 2023, which may have resulted in the unauthorized access to or acquisition of individuals private information ("Data Incident"). Defendant denies all of the Plaintiffs' claims and maintains that they did not do anything wrong.

**Am I included?** You are receiving this Notice because Defendants' records identify you are included in the Settlement Class. The Settlement Class consists of (1) all living individuals whose Private Information was identified as accessed or accessible in the Data Incident ("Total Class") and (2) a subclass of Total Class Members whose Social Security number was identified as accessed or accessible during the Data Incident ("SSN Class").

**What does the Settlement provide?** If approved by the Court, Defendant will create a $3,750,000 Settlement Fund to resolve the settlement. The Settlement Fund will be divided into: (1) a $2,000,000 non-reversionary common fund for the SSN Class; and (2) a $1,750,000 fund for the Total Class. Total Class Members may elect to receive up to $5,500 as reimbursement for Documented Losses and two years of Medical Monitoring, which offers dark-web and credit monitoring. SSN Class Members may also elect to receive a Cash Payment which will be determined on a *pro rata* (proportional) basis after payment of the SSN Class Settlement Administration Costs, a proportional share of attorneys' fees and expenses, and all Service Awards.

**How do I get the Settlement benefits?** You must file a Claim Form online at www.[website].com, or print a Claim Form from the Settlement Website and mail it to the address on the form by **Month XX, 202X**.

**What are my other options?** If you do nothing, you will not receive any settlement benefits, you will remain a member of the Settlement Class and you will give up your rights to sue the Defendant for the claims resolved by this settlement. If you do not want any settlement benefits, but you want to keep your right to sue Defendant for these claims you must opt-out of the settlement. If you do not opt-out of the settlement, you may object to it and ask the Court for permission to speak at the final approval hearing. The deadline to opt-out or object to it is **Month XX, 202X**.

**The Court's final approval hearing**. The Court will hold a hearing on **Month XX, 202X** to decide whether to approve the settlement, attorney fees (up to $1,250,000) and expenses (up to $50,000) and $4,500 Service Award payments to each Class Representative. If approved, these amounts will be paid from the Settlement Fund(s) before making payments to Settlement Class Members who submit valid claims. You or your lawyer may attend the hearing at your own expense.

**Want more information?** Visit www.[website].com for complete details about the settlement and instructions on how to act on your rights and options. You may also call (xxx) xxx-xxxx for more information.

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

Postage
Pre-paid

*Settlement Administrator – 83322*
c/o Kroll Settlement Administration LLC
PO Box 5324
New York, NY 10150-5324

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

<<Barcode>>

Class Member ID: <<Refnum>>

VISIT THE SETTLEMENT WEBSITE BY SCANNING THE PROVIDED QR CODE

# CLAIM FORM

Claims must be postmarked no later than **Month xx, 202x**.
You MUST submit a claim form online to receive your payment electronically.

**Note: You MUST submit a claim form online or use the full claim form on the website to make a claim for reimbursement of documented expenses.**

Circle the word "Yes" next to each benefit you are claiming.

**Credit Monitoring:** I want to receive two years of Medical Monitoring. **Yes**

**Cash Payment:** I am an SSN Class Member and I want a *pro rata* cash payment. **Yes**

By signing below, I swear and affirm under the laws of my State that the information I have supplied in this claim form is true and correct to the best of my recollection.

Signature: ______________________________ Dated: ______/______/______

# Exhibit 2

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

United States District Court for the Eastern District of Tennessee
*Cahill, et al., v. Memorial Heart Institute, LLC, d/b/a The Chattanooga Heart Institute*
Case No. 1:23-cv-00168-CLC-CHS

# If your Private Information was accessed or accessible in the cybersecurity incident that Memorial Heart Institute, LLC (d/b/a The Chattanooga Heart Institute) experienced between March 8 and March 16, 2023, a proposed class action settlement may affect your rights.

*A federal court authorized this Notice. You are not being sued. This is not a solicitation from a lawyer.*

- A Settlement has been reached with Memorial Heart Institute, LLC, doing business as The Chattanooga Heart Institute ("Defendant") in a class action lawsuit about a cybersecurity incident that occurred between March 8, 2023 through March 16, 2023, which may have resulted in the unauthorized access to or acquisition of individuals' private information ("Data Incident").
- You are included in this settlement as a Settlement Class Member if your Private Information (*i.e.*, names, mailing address, email address, phone numbers, date of birth, drivers' license number, Social Security number, account information, health insurance information, diagnosis/condition information, lab results, medications and other clinical, demographic or financial information) was identified as accessed or accessible in the Data Incident.
- As a Settlement Class Member, your rights are affected whether you act or do not act. Please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM FORM** | The only way to receive cash and other benefits from this settlement is by submitting a valid and timely Claim Form.<br>You can submit your Claim Form online at www.[website].com or mail it to the Settlement Administrator. You may also call the Settlement Administrator to receive a paper copy of the Claim Form. | **Month, __, 202X** |
| **OPT-OUT OF THE SETTLEMENT** | You can choose to opt-out of the settlement. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this settlement. You can elect to retain your own legal counsel at your own expense. If you opt-out, you will not be able to receive any benefits and you will not be bound by the terms of this Settlement Agreement. | **Month, __, 202X** |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt-out of the settlement, you may object to it by writing to the Court about why you don't like the settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may also file a claim for benefits. | **Month, __, 202X** |
| **DO NOTHING** | If you do nothing, you will not receive any benefits from this settlement, and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this settlement. | No Deadline |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.
- The Court in charge of this case still has to decide whether to approve the settlement.

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

## WHAT THIS NOTICE CONTAINS

**Basic Information**

1. Why was this notice issued? ..... 3
2. What is this lawsuit about? ..... 3
3. What is a class action? ..... 3
4. Why is there a settlement? ..... 3

**Who is in the Settlement?**

5. Who is included in the settlement? ..... 3
6. Are there exceptions to being included in the settlement? ..... 4

**The Settlement Benefits**

7. What can I get from this settlement? ..... 4
8. Tell me more about Documented Losses ..... 4
9. What claims am I releasing if I stay in the Settlement Class? ..... 4

**How to get Settlement Benefits – Making a Claim**

10. How do I submit a claim form and get Settlement Class Member benefits? ..... 5
11. When will I get my settlement benefits? ..... 5

**The Lawyers Representing You**

12. Do I have a lawyer in this case? ..... 5
13. Should I get my own lawyer? ..... 5
14. How will the lawyers be paid? ..... 5

**Excluding Yourself from the Settlement**

15. How do I opt-out of the settlement? ..... 5

**Objecting to the Settlement**

16. How do I tell the Court if I do not like the settlement? ..... 6
17. What is the difference between objecting and opting out? ..... 7

**The Court's Final Approval Hearing**

18. When is the Court's Final Approval Hearing? ..... 7
19. Do I have to come to the Final Approval Hearing? ..... 7

**If you Do Nothing**

20. What happens if I do nothing at all? ..... 7

**Getting More Information**

21. How do I get more information? ..... 8

## BASIC INFORMATION

### 1. Why was this notice issued?

A Court authorized this notice because you have a right to know about the proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to grant Final Approval of the settlement. This notice explains the lawsuit, your legal rights, what benefits are available, and who can receive them.

The lawsuit is captioned *Cahill, et al., v. Memorial Heart Institute, LLC, d/b/a The Chattanooga Heart Institute*, Case No. 1:23-cv-00168-CLC-CHS and is pending in the United States District Court for the Eastern District of Tennessee, Southern Division at Chattanooga. The people that filed this lawsuit are called the "Plaintiffs" and the company they sued, Memorial Heart Institute, LLC, is called the "Defendant."

### 2. What is this lawsuit about?

This lawsuit alleges that Private Information (such as name, mailing address, email address, phone number, date of birth, driver's license number, Social Security number, account information, health insurance information, diagnosis/condition information, lab results, medications and other clinical, demographic or financial information) was impacted by the Data Incident that occurred between March 8, 2023 and March 16, 2023.

Defendant denies all of the Plaintiffs' claims and maintains that it did not do anything wrong.

### 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals who sue are known as "Class Representatives" or "Plaintiffs." Together, the people included in the class action are called a "Settlement Class" or "Settlement Class Members." One court resolves the lawsuit for all Settlement Class Members, except for those who exclude themselves (sometimes called, "opting out") from a settlement. In this settlement, the Class Representatives are Stephen Cahill, Sheila Edwards, Sidney Jackson, Gisele Reed Allen, Jeff Bryden, and Elyn Painter.

### 4. Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or Defendant. The Defendant denies all claims and contends that it has not violated any laws. Plaintiffs and the Defendant agreed to a settlement to avoid the costs and risks of a trial, and through the settlement, Settlement Class Members are eligible to claim a payment and other benefits. The Plaintiffs and their attorneys, who also represent Settlement Class Members, think the Settlement is best for all Settlement Class Members.

## WHO IS IN THE SETTLEMENT?

### 5. Who is included in the settlement?

The Settlement Class consists of all living individuals whose Private Information was identified as accessed or accessible in the Data Incident (the "Total Class"). The Settlement also includes a subclass of Total Class Members whose Social Security numbers were identified as accessed or accessible during the Data Incident ("Social Security Class" or "SSN Class").

All members of the SSN Class are also part of the Total Class; however not all members of the Total Class are members of the SSN Class. The Total Class consists of approximately 460,000 individuals. The SSN Class consists of approximately 287,000 individuals.

### 6. Are there exceptions to being included in the settlement?

Yes, excluded from the Total Settlement Class and SSN Class are: (a) the judge(s) to whom the Action is assigned and any member of those judge's staffs or immediate family members; (b) counsel for the Parties, any member of their respective staffs who worked directly on the Action, and any member of their immediate families; (c) any governmental entity; (d) any entity in which any of the Defendants have a controlling interest; (e) any of Defendants' subsidiaries, parents, affiliates, and officers, directors, legal representatives, heirs, successors, or assigns; and (f) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

## THE SETTLEMENT BENEFITS

### 7. What can I get from this settlement?

If approved by the Court, Defendant will create a $3,750,000 Settlement Fund to resolve the settlement. The Settlement Fund will be divided into two separate funds: (1) a $2,000,000 non-reversionary common fund for the SSN Class; and (2) a $1,750,000 fund for the Total Class.

Members of the Total Class may elect to receive the following benefits:

(1) **Reimbursement for Documented Losses**: Reimbursement of up to a maximum of $5,500 in documented losses that are fairly traceable to the Data Incident; and

(2) **Credit Monitoring**: Two (2) years of Medical Monitoring, which offers dark-web and credit monitoring. The Medical Monitoring product has a value of approximately $120.00 per year, per Settlement Class Member.

In addition, members of the SSN Class may also elect to receive a Cash Payment. The amount of the Cash Payment will be determined on a *pro rata* (proportional) basis after payment of the SSN Class Settlement Administration Costs, a share of attorneys' fees and attorney expenses, and all Service Awards to the Class Representatives.

Settlement Administration costs, attorneys' fees and expenses will be divided between the SSN Common Fund (53%) and the Total Class Fund (47%).

### 8. Tell me more Documented Losses.

Settlement Class Members may submit a claim for Reimbursement of Documented Losses of up to a maximum of $5,500 if they can show documented losses that are fairly traceable to the Data Incident.

Documented Losses include, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (ii) costs incurred on or after March 16, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

### 9. What claims am I releasing if I stay in the Settlement Class?

Unless you opt-out of the settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Defendant about any of the legal claims this settlement resolves. The "Releases" section in the Settlement Agreement describes the legal claims that you give up if you remain in the Settlement Class. The Settlement Agreement can be found at www.[website].com.

## How to get Settlement Benefits – Making a Claim

### 10. How do I submit a claim form and get Settlement Class Member benefits?

You must submit a claim form by **MM/DD/YYYY**. Claim forms may be submitted online at www.[website].com OR may be mailed to the Settlement Administrator at *Settlement Administrator – 83322,* c/o Kroll Settlement Administration LLC, P.O. Box 5324, New York, NY 10150-5324.

### 11. When will I get my settlement benefits?

The short answer is – after the Settlement is "finally approved" and challenges, if any, to that approval are finally resolved. The Court is scheduled to hold a Final Approval Hearing on **Month XX, 202X, at X:X0 _.m.**, to decide whether to approve the settlement, how much to award in Attorneys' Fees and Costs to Class Counsel for representing the Settlement Class, and Service Award payments to the Class Representative who brought this Action on behalf of the Settlement Class.

If the Court approves the settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Settlement Class Member benefits will be distributed as soon as possible, if and when the Court grants Final Approval of the settlement and after any appeals are resolved.

## The Lawyers Representing You

### 12. Do I have a lawyer in this case?

Yes, the Court appointed Danielle L. Perry with Mason LLP, and Bryan L. Bleichner with Chestnut Cambronne PA, to represent you and other members of the Settlement Class ("Class Counsel"). You will not be charged directly for these lawyers; instead, they will receive compensation from the settlement amount, subject to Court approval.

If you want to be represented by your own lawyer, you may hire one at your own expense.

### 13. Should I get my own lawyer?

It is not necessary for you to hire your own lawyer because Class Counsel work for you. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 14. How will the lawyers be paid?

Class Counsel will ask the Court to approve Attorneys' Fees up to one-third (approx. $1,250,000) of the Settlement Fund plus reimbursement of reasonable expenses (up to $50,000), and $4,500 Service Award payments to each of the Settlement Class Representatives (all Settlement Class Representatives are members of the SSN Class). If approved, up to $666,666.67 in attorneys' fees and up to $26,500 in expenses will be deducted from the SSN Class Fund and up to $583,333.33 in attorneys' fees and up to $23,500 in proportional expenses will be deducted from the Total Class Fund. These deductions will be made before making payments to Settlement Class Members who submit valid claims.

## Excluding Yourself from the Settlement

### 15. How do I opt-out of the settlement?

If you do not want to receive any benefits from the settlement, and you want to keep your right to separately sue the Defendant about the legal issues in this case, you must take steps to exclude yourself from the Settlement Class. This is called "Opting Out" of the Settlement Class. The opt-out deadline to submit a request for exclusion from the settlement is **Month XX, 202X**.

To exclude yourself from the settlement, you must submit a written request for exclusion to the Settlement Administrator that includes the following information:

- your name, address, telephone number, and email address (if any);
- A statement indicating that you want to opt-out of the Settlement Class, such as "I wish to be excluded from the Settlement Class in *Cahill, et al., v. Memorial Heart Institute, LLC, d/b/a The Chattanooga Heart Institute*, Case No. 1:23-cv-00168-CLC-CHS; and
- your personal signature.

Your Request for Exclusion must be mailed to the Settlement Administrator at the address below, postmarked no later than **Month XX, 202X**.

*Settlement Administrator – 83322*
c/o Kroll Settlement Administration
ATTN: Exclusion Request
PO Box 5324
New York, NY 10150-5324

## OBJECTING TO THE SETTLEMENT

### 16. How do I tell the Court if I do not like the settlement?

If you are a Settlement Class Member, you can choose (but are not required) to object to the settlement if you do not like it or a portion of it, whether that be to the Settlement Class Member benefits, the request for Attorneys' Fees, Costs and Service Award payment, the releases provided to the Defendant, or some other aspect of the settlement. Through an objection, you give reasons why you think the Court should not approve the settlement.

For an objection to be considered by the Court, the objection must include:

a. the name of the proceedings (*Cahill, et al., v. Memorial Heart Institute, LLC, d/b/a The Chattanooga Heart Institute*, Case No. 1:23-cv-00168-CLC-CHS);
b. your full name, mailing address, telephone number, and email address (if any);
c. all grounds for the objection, accompanied by any legal support for the objection known to you or your counsel;
d. the identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;
e. a statement indicating whether you or your attorney(s) intend to appear at the Final Approval Hearing;
f. a statement confirming whether you intend to personally appear and/or testify at the Final Approval Hearing in support of your objection;
g. a list of all persons who will be called to testify at the Final Approval Hearing in support of your objection (if any);
h. the number of times you, your counsel and/or your counsel's law firm has objected to a class action settlement within the five years preceding the date of your objection, the caption of each case you objected to, and a copy of any orders related to or ruling upon your prior objections that were issued by the trial and appellate courts in each listed case;
i. your signature (an attorney's signature is not sufficient).

Objections must be mailed to the Court postmarked no later than **Month XX, 202X**.

United States District Court for the Eastern District of Tennessee, Chattanooga Division
900 Georgia Avenue, Suite 309
Chattanooga, TN 37402

A copy of your objection also must be mailed to Plaintiffs' Counsel, Defendant's Counsel, and the Settlement Administrator at the addresses below, postmarked no later than **Month XX, 202X**.

| PLAINTIFFS' COUNSEL | DEFENDANT'S COUNSEL | SETTLEMENT ADMINISTRATOR |
|---|---|---|
| Bryan L. Bleichner<br>Chestnut Cambronne PA<br>100 Washington Ave., Ste. 1700<br>Minneapolis, MN 55401<br>—and—<br>Danielle L. Perry<br>Mason LLP<br>5335 Washington Ave. NW, Ste. 640<br>Washington, DC 20015 | Joshua A. Mooney<br>Kennedys CMK LLP<br>1600 Market St., Suite 1410<br>Philadelphia, PA 19103<br>—and—<br>Daniel S. Marvin<br>Kennedys CMK LLP<br>22 Vanderbilt Ave., 24th Floor<br>New York, NY 100117 | *Settlement Administrator – 83322,*<br>c/o Kroll Settlement Administration LLC,<br>P.O. Box 5324,<br>New York, NY 10150-5324 |

**17. What is the difference between objecting and opting out?**

Objecting is telling the Court that you do not like something about the settlement. You can object to the settlement only if you do not exclude yourself from it. Excluding yourself from the settlement means telling the Court you do not want to be part of the settlement. If you exclude yourself/opt-out of the settlement, you cannot object to it because the settlement no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

**18. When is the Court's Final Approval Hearing?**

The Court is scheduled to hold a Final Approval Hearing on **Month XX, 202X at XX:X0 _.m.**, at the United States District Court for the Eastern District of Tennessee, Chattanooga Division, 900 Georgia Avenue, Suite 309, Chattanooga, Tennessee 37402, to decide whether to approve the settlement, how much to award in Attorneys' Fees and Costs to Class Counsel for representing the Settlement Class, and whether to award Service Awards to the Class Representatives who brought this Action on behalf of the Settlement Class. The date and time of this hearing may change without further notice. Please check www.[website].com for updates.

**19. Do I have to come to the Final Approval Hearing?**

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense. If you file an objection, you may, but you do not have to come to the Final Approval Hearing to talk about it. If you file your written objection on time and in accordance with the requirements above, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

## IF YOU DO NOTHING

**20. What happens if I do nothing at all?**

If you are a Settlement Class Member and you do nothing, you will give up your right to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against the Defendant and the Released Parties, as defined in the Settlement Agreement, about the legal issues resolved by this settlement. In addition, you

will be bound by the releases of the Released Parties in the settlement and will not be eligible to receive any settlement benefits.

## GETTING MORE INFORMATION

**21. How do I get more information?**

This Notice summarizes the proposed settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at the settlement website, www.[website].com.

If you have additional questions or need to update your address, you may contact the Settlement Administrator by phone, or by mail:

Toll-Free: (XXX) XXX-XXXX

Mail: *Settlement Administrator – 83322,* c/o Kroll Settlement Administration LLC, P.O. Box 5324, New York, NY 10150-5324.

**PLEASE DO NOT CONTACT THE COURT OR DEFENDANT.**
**THEY CANNOT ANSWER ANY QUESTIONS.**

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

# Exhibit 3A

*8307600000000*
8 3 0 7 6 0 0 0 0 0 0 0 0

**Your claim must be submitted online or postmarked by: Month xx, 202x**

## CLAIM FORM

*Cahill, et al., v. Memorial Heart Institute, LLC,*
*d/b/a The Chattanooga Heart Institute*
Case No. 1:23-cv-00168-CLC-CHS
United States District Court for the Eastern District of Tennessee

## GENERAL INSTRUCTIONS

If your Private Information was accessed or accessible in the cybersecurity incident that Memorial Heart Institute, LLC d/b/a The Chattanooga Heart Institute experienced between March 8 and March 16, 2023, you may submit a claim for Settlement Class Member Benefits as outlined below.

Please refer to the Long Form Notice posted on the Settlement Website www.[website].com for more information.

**To receive Credit Monitoring and reimbursement for documented losses and/or a cash payment, you must submit the Claim Form below no later than Month xx, 202x.**

**This Claim Form may be submitted electronically at www.[website].com**
**OR it may be mailed to the address below.**

Please type or legibly print all requested information in blue or black ink. Mail your completed Claim Form, including any supporting documentation, by U.S. mail to:

*Settlement Administrator - #83322*
c/o Kroll Settlement Administration
PO Box 5324
New York, NY 10150-5324

**All Settlement Class Members may submit a claim for Credit Monitoring and Reimbursement of Documented Losses. In addition, SSN Class Members may submit a claim for a Cash Payment.**

**Credit Monitoring**: Settlement Class Members may enroll in two (2) years of Medical Monitoring, which offers dark-web and credit monitoring.

**Reimbursement of Documented Losses**: Settlement Class Members may submit a claim for reimbursement of Documented Losses, up to a maximum of $5,500. Claims for reimbursement of documented expenses and losses must be supported with third-party documentation.

**Cash Payment**: SSN Class Members may submit a claim for a Cash Payment.

## I. PAYMENT SELECTION

If you would like to elect to receive your payment through electronic transfer, please visit the Settlement Website and timely file your Claim Form online. The Settlement Website includes a step-by-step guide for you to complete the electronic payment option.

## II. NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this Claim Form.

*8307600000000*

8 3 0 7 6 0 0 0 0 0 0 0 0

______________________________ ______________________________

**First Name** **Last Name**

______________________________________________________________

**Address 1**

______________________________________________________________

**Address 2**

______________________________________________ ___ ___ ___ ___ ___ ___ ___

**City** **State** **Zip Code**

**Telephone Number:** ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

## III. REIMBURSEMENT FOR DOCUMENTED LOSSES

Settlement Class Members may submit a claim for the Reimbursement of Documented Losses under this section for up to $5,500.00 per Settlement Class Member if you can show that your losses are related to the Data Incident, such as (i) unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (ii) costs incurred on or after March 16, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

Documentation supporting Documented Losses can include receipts or other documentation not "self-prepared" by the Settlement Class Member that document the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to support a request for reimbursement, but can be considered to add clarity to or support other submitted documentation. Settlement Class Members shall not be reimbursed for Documented Losses if they have already been reimbursed for the same losses by another source, including compensation provided in connection with the identity protection and credit monitoring services offered as part of the notification letter provided by Defendant or otherwise.

☐ I have attached documentation showing that the documented expenses listed below were caused by the Data Incident.

Personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation.

| **Cost Type** (Fill all that apply) | **Approximate Date of Loss** | **Amount of Loss** | **Description of Supporting Reasonable Documentation** (Identify what you are attaching and why) |
|---|---|---|---|
| Example: Credit Monitoring Service | 0 7/17/25 (mm/dd/yy) | $50.00 | Copy of credit monitoring service bill |
| | ___/___ ___/___ ___ (mm/dd/yy) | $__________.______ | |
| | __ ___/___ ___/___ ___ (mm/dd/yy) | $__________.______ | |

| **Cost Type** (Fill all that apply) | **Approximate Date of Loss** | **Amount of Loss** | **Description of Supporting Reasonable Documentation** (Identify what you are attaching and why) |
|---|---|---|---|
| | __ __/__ __/__ __ (mm/dd/yy) | $____________.________ | |

## IV. CASH PAYMENT – SSN CLASS MEMBERS ONLY

By checking the box below, I am requesting a Cash Payment that will be determined on a *pro rata* basis from the SSN Class Common Fund after payment of the SSN Class Settlement Administration Costs, and a proportional share of attorneys' fees and attorney expenses, and Service Awards to the Class Representatives. See the Long Form Notice posted on the Settlement Website www.[website].com for more information.

By checking the box below, I request an estimated $60 *pro rata* cash payment.

☐ Yes, I request a *pro rata* cash payment.

## V. CREDIT MONITORING SERVICES

☐ Yes, I want to receive two years of Medical Monitoring, which offers dark-web and credit monitoring.

## VI. ATTESTATION & SIGNATURE

By signing below, I swear and affirm under the laws of the United States that the information I have supplied in this Claim Form is true and correct to the best of my recollection.

______________________________________________    ___ ___ / ___ ___ / ___ ___ ___ ___
Signature    Date (mm/dd/yyyy)

______________________________________________
Print Name

**Reminder Checklist**

If your address changes or you need to make a future correction/update to the address you provide on this Claim Form, please visit the contact section of the Settlement Website at www.[website].com and provide your updated address information. Make sure to include your Class Member ID and your phone number in case we need to contact you in order to complete your request.

For more information, visit www.[website].com or call the Settlement Administrator at (xxx) xxx-xxxx.

# Exhibit 3B

*8307600000000*
8 3 0 7 6 0 0 0 0 0 0 0 0

**Your claim must be submitted online or <u>postmarked by</u>: Month xx, 202x**

## CLAIM FORM – TOTAL CLASS

*Cahill, et al., v. Memorial Heart Institute, LLC,*
*d/b/a The Chattanooga Heart Institute*
Case No. 1:23-cv-00168-CLC-CHS
United States District Court for the Eastern District of Tennessee

## GENERAL INSTRUCTIONS

If your Private Information was accessed or accessible in the cybersecurity incident that Memorial Heart Institute, LLC d/b/a The Chattanooga Heart Institute experienced between March 8 and March 16, 2023, you may submit a claim for Settlement Class Member Benefits as outlined below.

Please refer to the Long Form Notice posted on the Settlement Website www.[website].com for more information.

**To receive Credit Monitoring and reimbursement for documented losses and/or a cash payment, you must submit the Claim Form below no later than Month xx, 202x.**

**This Claim Form may be submitted electronically at www.[website].com**
**OR it may be mailed to the address below.**

Please type or legibly print all requested information in blue or black ink. Mail your completed Claim Form, including any supporting documentation, by U.S. mail to:

*Settlement Administrator - #83322*
c/o Kroll Settlement Administration
PO Box 5324
New York, NY 10150-5324

**All Settlement Class Members may submit a claim for Credit Monitoring and Reimbursement of Documented Losses.**

**Credit Monitoring**: Settlement Class Members may enroll in two (2) years of Medical Monitoring, which offers dark-web and credit monitoring.

**Reimbursement of Documented Losses**: Settlement Class Members may submit a claim for reimbursement of Documented Losses, up to a maximum of $5,500. Claims for reimbursement of documented expenses and losses must be supported with third-party documentation.

## I. PAYMENT SELECTION

If you would like to elect to receive your payment through electronic transfer, please visit the Settlement Website and timely file your Claim Form online. The Settlement Website includes a step-by-step guide for you to complete the electronic payment option.

## II. NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this Claim Form.

*8307600000000*

8 3 0 7 6 0 0 0 0 0 0 0 0

**First Name** **Last Name**

______________________________________________________________________

**Address 1**

______________________________________________________________________

**Address 2**

____________________________________________ ___ ___ ___ ___ ___ ___ ___

**City** **State** **Zip Code**

**Telephone Number:** ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

## III. REIMBURSEMENT FOR DOCUMENTED LOSSES

Settlement Class Members may submit a claim for the Reimbursement of Documented Losses under this section for up to $5,500.00 per Settlement Class Member if you can show that your losses are related to the Data Incident, such as (i) unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (ii) costs incurred on or after March 16, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

Documentation supporting Documented Losses can include receipts or other documentation not "self-prepared" by the Settlement Class Member that document the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to support a request for reimbursement, but can be considered to add clarity to or support other submitted documentation. Settlement Class Members shall not be reimbursed for Documented Losses if they have already been reimbursed for the same losses by another source, including compensation provided in connection with the identity protection and credit monitoring services offered as part of the notification letter provided by Defendant or otherwise.

☐ I have attached documentation showing that the documented expenses listed below were caused by the Data Incident.

Personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation.

| **Cost Type** (Fill all that apply) | **Approximate Date of Loss** | **Amount of Loss** | **Description of Supporting Reasonable Documentation** (Identify what you are attaching and why) |
|---|---|---|---|
| Example: Credit Monitoring Service | 0 7/17/25 (mm/dd/yy) | $50.00 | Copy of credit monitoring service bill |
| | ___/___ ___/___ ___ (mm/dd/yy) | $____________.________ | |
| | __ ___/___ ___/___ ___ (mm/dd/yy) | $_____________.________ | |

*8307600000000*
8 3 0 7 6 0 0 0 0 0 0 0 0

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| | __ ___/___ ___/___ ___ (mm/dd/yy) | $______________.________ | |

## IV. CREDIT MONITORING SERVICES

☐ Yes, I want to receive two years of Medical Monitoring, which offers dark-web and credit monitoring.

## V. ATTESTATION & SIGNATURE

By signing below, I swear and affirm under the laws of the United States that the information I have supplied in this Claim Form is true and correct to the best of my recollection.

_____________________________________________________ ____ ____ / ____ ____ / ____ ____ ____ ____

Signature Date (mm/dd/yyyy)

_____________________________________________________

Print Name

**Reminder Checklist**

If your address changes or you need to make a future correction/update to the address you provide on this Claim Form, please visit the contact section of the Settlement Website at www.[website].com and provide your updated address information. Make sure to include your Class Member ID and your phone number in case we need to contact you in order to complete your request.

For more information, visit www.[website].com or call the Settlement Administrator at (xxx) xxx-xxxx.

# Exhibit 4

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION OF CHATANOOGA**

| | |
|---|---|
| **STEPHEN CAHILL,** *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**MEMORIAL HEART INSTITUTE, LLC, d/b/a THE CHATTANOOGA HEART INSTITUTE.**<br><br>Defendant. | Case No. 1:23-cv-00168-CLC-CHS<br><br>**JURY TRIAL DEMANDED** |

This matter coming before the Court on Plaintiffs' Unopposed Motion for, and Memorandum in Support of, Preliminary Approval of Class Action Settlement (ECF No. X) and the Declaration of XXX in Support (ECF No. X) submitted therewith, and with the Court being fully advised on the matter, the Court hereby finds and orders as follows:

1. Unless otherwise defined herein, all defined terms in this order shall have the respective meanings ascribed to the same terms in the settlement agreement (referred to herein as the "Agreement").

2. The Court has conducted a preliminary evaluation of the settlement set forth in the Agreement. Based on this preliminary evaluation, the Court finds that the Agreement meets all applicable requirements of Federal Rule of Civil Procedure 23, for settlement purposes only, including that the Settlement Class is sufficiently numerous, that there are questions of law and fact common to members of the Settlement Class that predominate, that the representative parties fairly and adequately protect the interests of the class and that class treatment is an appropriate method for the fair and efficient adjudication of the controversy.

3. The Court further finds that: (i) there is good cause to believe that the settlement is fair, reasonable and adequate, (ii) the Agreement has been negotiated at arm's length between experienced attorneys familiar with the legal and factual issues of this case, and (iii) the settlement warrants notice of its material terms to the Settlement Class for their consideration and reaction. Therefore, the Court grants preliminary approval of the Settlement.

4. Pursuant to Rule 23, and for settlement purposes only, the Settlement Agreement establishes two settlement classes: the Total Class and the SSN Class. The Total Class consists of "all living individuals in the United States whose Private Information was identified as accessed or accessible in the Data Incident." The SSN Class is a narrower subset, defined to include "all living individuals in the United States who are members of the Total Class and whose Social Security number was identified as accessed or accessible during the Data Incident." Excluded from the Settlement Class are : (a) the judge(s) to whom the Action is assigned and any member of those judge's staffs or immediate family members; (b) counsel for the Parties, any member of their respective staffs who worked directly on the Action, and any member of their immediate families; (c) any governmental entity; (d) any entity in which any of the Defendant has a controlling interest; (e) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, legal representatives, heirs, successors, or assigns; and (f) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

5. For settlement purposes only, the Court hereby approves the appointment of Plaintiffs Stephen Cahill, Sheila Edwards, Sidney Jackson, Gisele Reed Allen, Jeff Bryden, and Elyn Painter as Class Representatives.

6. For settlement purposes only, the Court hereby approves the appointment of (i) Chestnut Cambronne PA; and Mason LLP as Class Counsel and finds that they are competent and

capable of exercising the responsibilities of Class Counsel.

7. On _______, 2026 at ____ a.m./p.m., this Court will hold a final approval hearing on the fairness, adequacy and reasonableness of the Agreement and to determine whether: (a) final approval of the Agreement should be granted and (b) Class Counsel's application for attorney's fees and expenses and incentive awards to the Class Representatives should be granted. No later than 14 days prior to the deadline to opt out of or object to the Settlement Plaintiffs must file any papers in support of Class Counsel's application for attorneys' fees and Service Awards to the Class Representatives, and no later than 30 days prior to Final Approval Hearing Plaintiffs must file any papers in support of final approval of the Agreement and in response to any objections.

8. Pursuant to the Agreement, XXX is hereby appointed as the Settlement Administrator and shall be required to perform all of the duties of the Settlement Administrator as set forth in the Agreement or this Order.

9. The Court approves the proposed plan for giving notice to the Settlement Class, as fully described in the Agreement. The plan for giving notice, in form, method and content, fully complies with the requirements of the Federal Rules of Civil Procedure and due process and is due and sufficient notice to all persons entitled thereto.

10. The Court hereby directs the parties and Settlement Administrator to complete all aspects of the Notice Plan no later than 30 days after entry of this Order (the "Notice Deadline").

11. All persons who meet the definition of the Settlement Class and who wish to exclude themselves from the Settlement Class must submit their request for exclusion in writing no later than the Objection/Exclusion deadline, which is 60 days after the Notice Deadline. Any Settlement Class Member who fails to timely and properly exclude themselves from the Settlement through the procedure outlined in the Notice shall be deemed to remain a Settlement Class Member

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

and shall be bound as a Settlement Class Member by the Agreement. Settlement Class Members shall be bound by all determinations and orders pertaining to the Agreement, including the release of all claims to the extent set forth in the Agreement, whether favorable or unfavorable, unless such persons request exclusion from the Settlement Class in a timely and proper manner, as hereinafter provided and as provided for in the Settlement Agreement. Settlement Class Members who do not timely and validly request exclusion shall be so bound even if they have previously initiated or subsequently initiate litigation or other proceedings against Defendant or the Released Parties relating to the claims released under the terms of the Agreement.

12. Any member of the Settlement Class who intends to object to the Agreement must include in his or her written objection: (i) the objector's full name and address; (ii) the case name and docket number— *Cahill, et al., v. Memorial Heart Institute, LLC* Case No. 1:23-cv-00168-CLC-CHS (ED. TN); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable and any supporting documents; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing, and; (vi) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.

13. Any Settlement Class Member who fails to timely file a written objection with the Court in accordance with the terms of this Order and as detailed in the Notice, and at the same time provide copies to designated counsel for the parties, shall not be permitted to object to the Agreement at the final approval hearing, and shall be foreclosed from seeking any review of the Agreement by appeal or other means and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action or any other action or proceeding.

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

14. Class Members who wish to participate in the settlement and receive their share of the settlement proceeds shall complete and submit a claim form in accordance with the terms and conditions of the Agreement. The Settlement Administrator shall accept, and process claim forms in accordance with the Agreement.

15. The certification of the Settlement Class shall be binding only with respect to the Settlement of the Action. In the event that the Agreement fails to become effective, is overturned on appeal or does not become final for any reason whatsoever, the parties shall be restored to their respective positions in the Action as of the date of the signing of the Agreement, and no reference to the Settlement Class, the Agreement or any documents, communications or negotiations related in any way thereto shall be made for any purpose.

16. Pending the final determination of the fairness, reasonableness and adequacy of the Settlement, no Settlement Class Member may prosecute, institute, commence or continue any lawsuit (individual action or class action) with respect to the Released Claims against any of the Released Parties.

17. The Final Approval Hearing may be postponed, adjourned, transferred or continued by order of the Court without further notice to the Settlement Class. At or following the Final Approval Hearing, the Court may enter a judgment approving the Agreement and a Final Approval Order in accordance with the Agreement that adjudicates the rights of all Settlement Class Members.

18. Settlement Class Members do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.

19. All discovery and other proceedings in the Action as between Plaintiffs and Defendant are stayed and suspended until further order of the Court except such actions as may be

Docusign Envelope ID: 0373F45F-D5CF-4AEE-AA45-7FB99EB373DB

necessary to implement the Agreement and this Order.

20. For clarity, the deadlines set forth above and in the Agreement are as follows:

**Notice Deadline:** 30 Days after Preliminary Approval

**Motion for Final Approval:** 30 Days before Final Approval Hearing

**Motion for Service Award, Attorneys' Fees and Costs:** 14 Days before the deadline for Class Members to Opt-Out or Object

**Opt-Out Deadline:** 60 Days after Notice Deadline

**Objection Deadline:** 60 Days after Notice Deadline

**Claim Deadline:** 90 Days after Notice Deadline

**Final Approval Hearing:** more than 135 days after Preliminary Approval Hearing

**IT IS ORDERED**.

ENTERED: ____________________ JUDGE: ________________________________