| | |
|---|---|
| STEPHEN CAHILL, et al., *individually and on behalf of all others similarly situated* | ) ) ) ) |
| Plaintiffs, | ) Case No.: 1:23-cv-168 ) ) Judge Curtis L. Collier |
| v. | ) Magistrate Judge Christopher H. Steger ) |
| MEMORIAL HEART INSTITUTE, LLC d/b/a The Chattanooga Heart Institute | ) ) ) |
| Defendant. | ) ) |

## M E M O R A N D U M

Before the Court is a motion by Plaintiffs Stephen Cahill, Sheila Edwards, Sidney Jackson, Gisele Reed Allen, Jeff Bryden, and Elyn Painter (collectively "Plaintiffs") for an order preliminarily approving the Rule 23 settlement agreement in this action. (Doc. 66.) Plaintiffs also request that the Court appoint Plaintiffs as class representatives, appoint Plaintiffs' counsel as class counsel, order the class notice be distributed to the settlement class, and schedule a final approval hearing. (Doc. 67 at 2–3.) Defendant Memorial Heart Institute, LLC does not oppose the motion. (*See* Doc. 67-1.)

## I.    BACKGROUND

This action arises from a data breach occurring between March 8, 2023, and March 16, 2023. (Doc. 67 at 2.) Defendant discovered the breach on approximately April 17, 2023. (Doc. 24 ¶ 9.) After discovering the breach, Defendant sent notice of the breach to approximately 460,000 individuals whose private information was accessed or potentially accessed. (Doc 67 at 3.) Of those 460,000 individuals, a subset of 287,000 individuals also potentially had their Social Security numbers compromised. (*Id.*) Following the data breach, Karakurt, a financially

motivated cybercrime group that steals data and demands payments from individuals by threatening disclosure of their personal information, claimed responsibility for the data breach. (Doc. 24 ¶ 14.)

Plaintiff Stephen Cahill filed a complaint on behalf of himself and others similarly situated. (Doc. 1; Doc. 67 at 3.)  Soon after, several other individuals filed complaints with similar allegations and the related cases were consolidated.  (*Id.*)  On November 2, 2023, Plaintiffs filed a consolidated class action complaint ("CAC").  (Doc. 24.)  The complaint stated, among other allegations, that Defendant maintained Plaintiffs' private information in a reckless manner, failed to take preventative measures to safeguard patient private information, and failed to provide timely and adequate notice to Plaintiffs and other class members.  (*Id.* at 4.)

While discovery was ongoing, the parties underwent a full-day virtual mediation on September 9, 2025, in which the parties "reached an agreement in principle to the material terms of a class-wide settlement."  (Doc. 67 at 4.)

The settlement creates two classes: the "Total Class" and the "SSN Class."  (Doc. 67 at 5.) The Total Class is "all living individuals in the United States whose Private Information was identified as accessed or accessible in the Data Incident," and consists of approximately 460,000 members.  (*Id.*)  The SSN Class is a subset of the Total Class and is defined as "all living individuals in the United States who are members of the Total Class and whose Social Security number was identified as accessed or accessible during the Data Incident."  (*Id.*)  The agreement also creates two funds: the Total Class Fund, which is a claims made fund that benefits the entire settlement class including the SSN class, and the SSN Class fund, which is a non-reversionary common fund for the benefit of those whose social security numbers were potentially compromised.  (*Id.* at 6.)

2

Defendant agrees to pay $2,000,000 into the non-reversionary SSN class fund. (*Id.*) Following the payment of costs and fees, this fund will provide members of the SSN Class the ability to seek a prorated cash payment. (*Id.*) Defendant also agrees to pay a claims-made settlement fund of up to $1,750,000 into the Total Class Fund. (*Id.*) This will be used to pay claims for up to $5,500 per Settlement Class member and two years of medical monitoring from CyEx on a claims-made basis. (*Id.*)

The parties agree that Kroll Settlement Administration should serve as the settlement administrator. (*Id.*) Defendant will provide Kroll with a list of class members, and Kroll will establish a settlement website to provide class members with all relevant information and send notices to each settlement class member. (*Id.* at 6–7.) Should a member wish to opt out of the settlement or object to the settlement, they have 60 days to mail such an opt-out or objection. (*Id.* at 7.)

The parties now move the Court for preliminary approval of the settlement agreement. Defendant does not oppose the motion. (*See id.* at 26–27.) The Court will first address whether the settlement agreement should be preliminarily approved. The Court will then address the proposed class notice, as well as the proposed class appointments.

## II.     **DISCUSSION**

The parties seek preliminary approval of the settlement agreement under Rule 23 of the Federal Rules of Civil Procedure. Approval of a Rule 23 class-action settlement occurs in three steps: "(1) the court must preliminarily approve the settlement; (2) the class members must be given notice of the proposed settlement; and (3) the court must hold a hearing to determine whether the proposed settlement is fair, reasonable and adequate." *Thacker v. Chesapeake Appalachia,*

3

*L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (citing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001)).

**A.  Rule 23 Preliminary Approval of Settlement**

At the preliminary approval stage, the Court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).  At this stage, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Lott v. Louisville Metro Gov't*, No. 3:19-cv-271, 2023 WL 2562407, at *1 (W.D. Ky. Mar. 17, 2023) (quoting *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-cv-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015)). The Court will address both requirements.

**1.  Likelihood of Approval**

To preliminarily approve the settlement agreement under Rule 23(e)(2), the proposed settlement must be fair, reasonable, and adequate.  To determine this, the Court considers whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i)  the costs, risks, and delay of trial and appeal;

(ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)  any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

4

Fed. R. Civ. P. 23(e)(2)(A)–(D). "The first two factors are procedural in nature, while the latter two direct the Court to examine the substance of the settlement." *In re OnePoint Patient Care LLC, Data Breach* Litigation, No. 3:24-cv-649, 2026 WL 74403, at *3 (W.D. Ky. Jan. 9, 2026). Several factors guide this inquiry: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("UAW").

### a.     Adequate Representation and Arm's Length Negotiation

The class representatives and class counsel have adequately represented the class and engaged in arm's length negotiation. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d. 818, 838 (E.D. Mich. 2008). "The focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2)(A)–(B), 2018 Advisory Committee Notes.

Here, the class representatives are members of both the Total Class and SSN class, do not possess interests inapposite to the settlement class, and "coincide identically with the claims of the class." (Doc. 67 at 12.) They have vigorously prosecuted the claims and been involved at each stage of the litigation, including being involved in discovery and depositions. (*Id.*) Counsel represents that the class representatives have been "essential to the prosecution of this class action case." (Doc. 67-2 ¶ 53.)

Class counsel has adequately represented the class and engaged in arm's length negotiation. Class counsel possesses "significant expertise in data breach and privacy litigation," with a "vigorous representation and understanding of the legal and technical issues in this case." (Doc. 67-2 ¶ 22.) (*See also* Doc. 67-2 at 15–21, 22–32.) Furthermore, the agreement was procedurally the result of "rigorous, arm's-length negotiations conducted over multiple sessions." (Doc. 67-2 ¶ 17). Counsel represents the negotiations were "hard fought, adversarial, and informed by each side's thorough understanding of the relevant legal and factual issues." (*Id.*) The mediation occurred with an experienced data breach mediator (Doc. 67 at 4), which "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008).

### b. Adequacy of the Relief and Fair Treatment of the Class Members

The next two factors require the Court to consider whether the relief provided for the class is adequate and whether the proposal treats class members equitably relative to each other.

To address the adequate relief, courts should consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). This analysis "overlap[s] with the *International Union* factors requiring that the Court evaluate the 'complexity, expense, and likely duration of the litigation' and the 'likelihood of success on the merits.'" *In re Flint Water Cases*, 571 F. Supp. 3d 746, 781 (E.D. Mich. 2021) (quoting *UAW*, 497 F.3d at 631). Here, the Court finds that the relief is adequate.

6

The costs, risks, and delay of trial favor settlement. Courts have recognized that "data breach litigation is inherently complex." *In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 WL 1557366, at *20 (E.D. Pa. Apr. 9, 2024). Here, the parties had already engaged in extensive written discovery, participated in in-person depositions, and had several other depositions scheduled had this case not resolved at mediation. (Doc. 67 at 16.) Furthermore, counsel represents that data breach cases also "demand a sophisticated understanding of information technology and cybersecurity issues," frequently requiring testimony from "multiple, costly expert witnesses." (Doc. 67-2 ¶ 18.) Balanced with a high likelihood of success on the merits, the Court finds that the costs and risks associated with trial, including multiple expensive expert witnesses, tip this factor in favor of preliminary approval.

The method of disbursement is also effective. This analysis "requires the Court to ensure that claims processing (1) facilitates filing legitimate claims and (2) is not unduly demanding." *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 663 (N.D. Ohio 2023). Here, claims processing is straightforward. A postcard notice includes a QR code linking directly to the Claim Forms with relevant information about how to submit the forms and the deadlines. (Doc. 67 at 7.) It provides timely methods for distributing monetary awards to claimants. Most importantly, it provides clear criteria by which the settlement administrator must make decisions about what documented losses count as "fairly traceable" to the data incident. (Doc. 67-1 ¶ 92.)

Lastly, the proposed award of attorney fees is reasonable. The settlement agreement provides that "Class Counsel shall apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund." (Doc. 67-1 ¶ 134.) It sets caps on attorney

7

fees for each fund; for the SSN Class Fund, class counsel may apply to the Court for an award of attorney fees of up to $666,666.67, and for the Total Class Fund, class counsel may apply for an award of attorney fees up to $583,333.33. (*Id.*) And "[t]he combined total of attorney's fees shall not exceed $1.25 Million." (*Id.*) "One-third of the total settlement value is within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit." *Smith v. Specialty Networks, LLC*, No. 1:24-c-286, 2025 U.S. Dist. LEXIS 134484, at 16 (E.D. Tenn. July 15, 2025) (citing *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014)); *see also Back v. Ray Jones Trucking, Inc.*, No. 4:22-cv-5, 2025 U.S. Dist. LEXIS 162558, at *18 (W.D. Ky. Aug. 21, 2025) ("The rate of one-third the gross settlement amount is well within the range of attorneys' fees previously approved by other class action settlements by the Sixth Circuit and this Court.").

Furthermore, the proposed award treats class members equitably relative to each other. Here, the settlement agreement makes all class members in the Total Class eligible to receive a payment up to $5,500 based on their documented losses. (Doc. 67-1 at 57.) Additionally, all members of the Total Class may elect to receive two years of medical monitoring. (*Id.*) And members of the SSN class "may also elect to receive a Cash Payment," which "will be determined on a *pro rata* (proportional) basis." (*Id.*) This treats all members in each class equitably to each other; all members in the Total Class are eligible to receive the same type of payment—reimbursement based on their documented losses plus medical monitoring. For the subset of individuals who had their social security number compromised, all members may submit the same claim for a cash payment, which is determined on a *pro rata* basis.

Named Plaintiffs will receive a "reasonable service award in the amount of $4,500 each," meant "to recognize Plaintiffs for their efforts on behalf of the Class, including assisting in the investigation of the case, reviewing the pleadings, answering counsel's many questions, and reviewing the terms of the Settlement Agreement." (Doc. 67-2 ¶ 34.) "Such payments generally 'do[] not raise a red flag' in the settlement-approval inquiry 'because the class representative and class member are not similarly situated in regard to… the incentive payment: the class representative did extra work and took extra risk to earn that." *Saldana v. Amazon.com, Inc. (In re Amazon.com, Inc.*), 2024 U.S. Dist. LEXIS 238956, at *35 (W.D. Ky. Dec. 23, 2024) (citing *Newberg on Class Actions* § 11.38 (3d ed. 1992)). Such an award is within the threshold of what the Sixth Circuit has deemed appropriate for service awards; here, the service award is $4,500, and class members are eligible to receive up to $5,500 each. *See Strano v. Kiplinger Wash. Editors, Inc.*, 646 F. Supp. 3d 909, 913 (E.D. Mich. 2022) ("Although the Sixth Circuit has not defined the outer limits for service awards, a survey of the precedent suggests service awards are appropriate if, absent proof of the lead plaintiff's extraordinary involvement, they are at most 10 times the amount that the unnamed class members would receive.") Therefore, after examining the terms of the settlement, the Court finds that it treats all class members equitably relative to each other.

The remaining UAW factors include "(5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. These also favor settlement; the motion is unopposed and class representatives and class counsel both support settlement. (*See generally* Doc. 67.) The settlement will provide adequate notice to absent class members. (Doc. 67 at 24–25.) And

the settlement serves the public interest. "There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205). This is especially true in a complex data breach case like this one, where the length and necessary expertise could lead to a serious strain on judicial resources.

## 2. Likelihood of Settlement Class Certification

The Court must now determine whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). A court may certify a class for settlement purposes where the proposed class "satisfies each of Rule 23(a)'s requirements and that it falls within one of three categories permitted by Rule 23(b)." *UAW*, 497 F.3d at 625. The Court will start with the requirements of 23(a).

### a. Rule 23(a) Requirements

Rule 23(a)(1)–(4) requires numerosity, commonality, typicality, and adequacy of representatives for class certification.

First, the class is numerous. The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The plaintiff is not required to 'establish that it is impossible to join all members of the proposed class[,]' but simply that joinder 'would be difficult and inconvenient.'" *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (quoting *Day v. NLO*, 144 F.R.D. 330, 333 (S.D. Ohio 1992) (alteration in original)). While no strict numerical test exists, "substantial numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th

Cir. 2006) (internal quotation marks omitted). The class here is substantial. It exceeds 460,000 individuals, which is a number large enough to make joinder difficult and inconvenient.

Second, there are common questions of law and fact. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *General Tel. Co. v. Falcon*, 457 US. 147, 157 (1982)). The question is not "whether common questions *predominate*, but… whether there *is* even a single common question.'" *Id.* at 359 (emphasis in original) (internal citations and quotations omitted). The putative members' claims must depend on a common contention capable of class-wide resolution, where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Here, there are several common questions: whether Defendant owed Plaintiffs a duty of care with respect to protection of their confidential information, whether they implemented reasonable and industry standard cybersecurity safeguards, and whether they breached that duty. (*See* Doc. 67 at 19). These all stem from the same data breach incident. *See Savidge v. Pharm-Save Inc.*, 727 F. Supp. 3d 661, 698 (W.D. Ky. 2024) (finding that where common questions of law all arose from the same 2016 data breach, "the questions of facts necessary to resolve these questions are common to the class."). Therefore, the commonality requirement is satisfied.

Third, the claims and defenses are typical of the settlement class. "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Lit.*, 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). The "claim is not typical if '[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's

11

claim.'" *Woodall v. Wayne Cnty, Mich.*, No. 20-1705, 2021 WL 5298537, at \*4 (6th Cir. Nov. 15, 2021) (quoting *Sprague*, 133 F.3d at 399) (alteration in original).  The commonality and typicality requirements "tend to merge." *Rikos v. P&G*, 799 F.3d 497, 509 (6th Cir. 2015) (quoting *Dukes*, 564 U.S. at 349 n.5).  "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, because the Plaintiffs' claims all arise from the same data breach incident and same legal theory, resolving the claims of the named plaintiffs would resolve the claims of the entire class.  *See Savidge*, 727 F. Supp. 3d 661, 700 ("In several data breach cases, courts have found the typicality requirement satisfied.").

Finally, the class representatives "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The Sixth Circuit has articulated two criteria for determining adequacy of representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. at 576 (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012)).  In addition, the Court should "determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Young*, 693 F.3d at 543 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)) (internal quotation marks omitted).

The named Plaintiffs have the same interests as the unnamed members of the class: seeking recovery for the data breach that compromised their personal information.  The Plaintiffs "desire the same outcome of this litigation" as the unnamed class members.  (Doc. 67 at 12.)   Counsel also represents that the second prong is met in terms of Plaintiffs' prosecution of this case.

Plaintiffs have "vigorously prosecuted these cases for the benefit of all Class Members," including taking steps like reviewing pleadings, participating in extensive discovery, and participating in depositions. (*Id.*) And class counsel has met the requirements under Rule 23(g) that their representation has been adequate. Counsel has "investigated this matter thoroughly," researched questions of law and fact, and investigated potential claims and defenses. (Doc. 67 at 13.) And, as described earlier, counsel has extensive experience in this area. (Doc. 67-2 ¶ 22; Doc. 67-2 at 15–21, 22–32.). Therefore, the representation has been adequate.

### b. Rule 23(b) Requirements

The Class must also satisfy one of the three requirements of Rule 23(b). *Dukes*, 564 U.S. at 345. Plaintiffs contend the class satisfies Rule 23(b)(3), which permits class actions if (1) the common questions of law and fact predominate over any questions affecting only individuals and (2) the class-action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Plaintiffs must "establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (citing *In re Visa Check/MasterMoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124, 136 (2d. Cir. 2001)) (internal quotations omitted). At the preliminary approval stage, "the analysis of the predominance requirement must account for the fact that this class is proposed for settlement purposes only and that the alleged wrongdoing arises out of a common set of facts." *In re Flint Water Cases*, 499 F. Supp. 3d 399, 424 (E.D. Mich. 2021).

Here, the predominance requirement is met because the claims all arise out of the same conduct. "The central liability question for Plaintiffs and Class Members is whether Defendant

failed to safeguard personal information." (Doc. 67 at 23.) Several questions common to all claims stem from this; the existence of a duty, the breach of a duty, potential delays in notifications, violations of common and statutory law, and whether private information was actually compromised. (*Id.*) Those questions all arise from that common question of a failure to safeguard personal information. Because that common question "is at the heart of the litigation," the predominance requirement is met. *Powers v. Hamilton Cnty. Pub. Def. Com'n*, 501 F.3d 592, 619 (6th Cir. 2007).

The superiority requirement is also met. Superiority "is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Lab'ys*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006)). Courts should consider both the difficulties that may arise in managing a class action as well as the purpose of class action litigation. *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 463–64 (6th Cir. 2020). "Relevant factors in this inquiry include: (1) the interests of the class members in individually controlling separate actions; (2) the extent and nature of the litigation already begun by members of the class, and; (3) the desirability of concentrating the litigation in a particular forum." *In re Flint Water Cases*, 499 F. Supp. 3d at 425. "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers*, 501 F.3d at 619.

Here, there are over 460,000 class members. As Plaintiffs note, "absent class treatment, hundreds of thousands of Class Members will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants." (Doc. 67 at 24.) Because potential damages to be claimed are small for each person individually relative to the cost of litigation, the incentives do not encourage individual plaintiffs

14

to bring lawsuits. *See Hicks*, 965 F.3d at 464 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Young*, 693 F.3d at 545). Furthermore, the facts arise from a single course of wrongful conduct—the data breach incident. Therefore, a class action is the superior means of resolution.

Therefore, the requirements of Rule 23(a) and Rule 23(b)(3) are met, and the Court finds that it will likely be able to certify the class for purposes of approving the settlement. Accordingly, having decided that the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class the purposes of judgment on the proposal," the Court will **PRELIMINARILY APPROVE** the settlement agreement. *See* Fed. R. Civ. P. 23(e)(1)(B)(i).

### B. Proposed Notice to Class Members

Next, the Court must "direct notice in a reasonable manner to all class members who would be bound" by a proposed class settlement. Fed. R. Civ. P. 23(e)(1)(B). The Court must direct to class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice should be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Meyers v. Dtna Trucks N. Am., LLC*, No. 14-2361, 2014 WL 12531121, at *9 (W.D. Tenn. Oct. 8, 2014) (quoting *UAW*, 497 F.3d at 629–30). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

15

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Here, the notice meets these requirements. It will be sent by mail (Doc. 67-3 ¶ 7) and, for those returned undeliverable without a forwarding address, there will be "an advanced address search process in an effort to find a more current address for the record" with a new notice sent if an updated address is returned. (*Id.* ¶ 10.) It will establish a toll-free telephone number to allow settlement class members to obtain information about the settlement. (*Id.* ¶ 13.)

The notice contains the nature of the action in that it describes what the lawsuit is about, the nature of the data breach incident, and claims and defenses. (Doc. 67-1 at 56.) It defines the class (*id.*) and states that members may enter an appearance through an attorney (*Id.* at 58). And it provides adequate notice as to exclusion. (*Id.*at 58–59.) It states that the court will exclude from the class any member who requests exclusion, and it explains the time and manner for requesting exclusion. (*Id.* at 58–60.) And it explains that the effect of a class judgment is binding on its members. (*Id.* at 60–61.)

The notices to be sent out are clear and direct. They are organized by questions that are easy to read and comprehend, have a table of contents, and use plain language. Thus, the notice adequately apprises the members of the class and affords them the opportunity to make informed decisions in accordance with the requirements of Rule 23(c) and due process. The Court will **APPROVE** the notice program (Doc. 67-1).

16

### C. Appointment of Class Counsel and Class Representatives

Plaintiffs request that the Court "appoint Plaintiffs' counsel as Class Counsel" and "appoint Plaintiffs as Class Representatives." (Doc. 67 at 2.)

Federal Rule of Civil Procedure 23 authorizes the court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). When an applicant seeks appointment as class counsel, "the court may appoint that applicant only if the applicant is adequate." Fed. R. Civ. P. 23(g)(2). To assess an applicant's adequacy to serve as class counsel, courts must consider:

(i)     the work counsel has done in identifying or investigating potential claims in the action;
(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii)   counsel's knowledge of the applicable law; and
(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Further, any applicant the court appoints "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

For the reasons previously discussed when discussing the likelihood of approval and the certification of the class, the Court finds that the representation here has been vigorous, thorough, and rigorous. Counsel has extensive experience with class actions and data breach litigation. counsel has extensive experience in this area. (Doc. 67-2 ¶ 22; Doc. 67-2 at 15–21, 22–32.) Therefore, the Court will **APPOINT** Plaintiffs' counsel, Chestnut Cambronne PA and Mason LLP, as class counsel.

The Court also finds that the named Plaintiffs have fairly and adequately protected the interests of the class, as well as fulfilled their duties throughout the litigation. They have "provided documents, reviewed pleadings, maintained contact with Class Counsel, and consulted with Class Counsel regarding the mediation and the Settlement." (Doc. 67-2 ¶ 54.) The Court will therefore

conditionally **APPOINT** Plaintiffs Stephen Cahill, Sheila Edwards, Sidney Jackson, Gisele Reed Allen, Jeff Bryden, and Elyn Painter as class representatives for the settlement class.

## III.    CONCLUSION

The Court will **GRANT** the motion (Doc. 66) and preliminarily approve the proposed settlement agreement (Doc. 67-1).  The Court will **APPOINT** Kroll Settlement Administration LLC as settlement administrator.  The Court will **APPROVE** the proposed settlement notice plan (Doc. 67-1, ex. 1) and **DIRECT** the settlement administrator to provide notice of the proposed settlement to the class members.  The Court will **CONFIRM** Plaintiffs' Counsel as class counsel and will **APPOINT** Plaintiffs as class representatives.  The Court will hold a final approval and fairness hearing on **Thursday, May 28, 2026, at 2:00 p.m. Eastern Time** at the federal courthouse in Chattanooga, Tennessee.

**AN APPROPRIATE ORDER WILL ENTER.**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

18